Azar Mouzari, SBN 263461
Nilofar Nouri, SBN 311871
**BEVERLY HILLS TRIAL ATTORNEYS, P.C.**
468 N. Camden Drive, Suite 238
Beverly Hills, California 90210
Tel:  310-858-5567  Fax: 424-286-0963
Email: azar@bhtrialattorneys.com
Email: nilofar@bhtrialattorneys.com

Attorneys for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN CALUWE, an individual; SHERVIN SHAHHIAN, an individual; LEILA KHAJE HOSEINI, an individual; SOHEIL VAHEDI, an individual, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TOYOTA MOTOR SALES, U.S.A., INC., a California Corporation, TOYOTA MOTOR NORTH AMERICA, INC., a California Corporation, TOYOTA MOTOR CREDIT CORPORATION d.b.a. TOYOTA FINANCIAL SERVICES, a California Corporation, and DOES 1 through 20 inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(1) FRAUDULENT CONCEALMENT AND MISREPRESENTATION**<br>**(2) VIOLATION OF THE BUSINESS & PROFESSIONS CODE SECTIONS 17200 ET SEQ. ("UCL")**<br>**(3) VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW – BUSINESS & PROFESSIONS CODE SECTIONS 17500 ET SEQ.**<br>**(4) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (SONG-BEVERLY CONSUMER WARRANTY ACT)**<br>**(5) VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**<br>**(6) UNJUST ENRICHMENT** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS………………………………………………...........….…2

GENERAL ALLEGATIONS………………………………………………..…....3

PARTIES……………………………………………………………………….…....6

       I.    Plaintiffs…………………………………………………...………..6

       II.   Defendants………………………………………………..…………6

JURISDICTION AND VENUE……………………………………...…………..7

CLASS ACTION ALLEGATIONS……………………………………...………...7

CAUSES OF ACTION……………………………….………...…………..10

       COUNT I: FRAUDULENT CONCEALMENT AND MISREPRESENTATION.......10

       COUNT II: VIOLATIONS OF THE BUSINESS & PROFESSIONS CODE SECTIONS 17200 ET SEQ. ("UCL")……………………………………….......12

       COUNT III: VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW – BUSINESS & PROFESSIONS CODE SECTIONS 17500 ET SEQ………………..14

       COUNT IV: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (SONG-BEVERLY CONSUMER WARRANTY ACT)……………………...….…15

       COUNT V: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT........18

       COUNT VI: UNJUST ENRICHMENT…………………………………………...19

PRAYER FOR RELIEF……………………………………………………….....19

JURY TRIAL DEMAND…………………………………………………….........20

COME NOW Plaintiffs BRYAN CALUWE, an individual; SHERVIN SHAHHIAN, an individual; LEILA KHAJE HOSEINI, an individual; SOHEIL VAHEDI, an individual; and all others similarly situated (collectively "Plaintiffs"), and through their counsel of record, Beverly Hills Trial Attorneys, P.C., file this class action complaint against TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR NORTH AMERICA, INC., and TOYOTA MOTOR CREDIT CORPORATION d.b.a. TOYOTA FINANCIAL SERVICES ("TOYOTA"), and DOES 1 through 20, inclusive (collectively "Defendants"), seeking damages and relief on behalf of themselves and for all others similarly situated for: fraudulent concealment and misrepresentation, violation of California's Unfair Competition Law - Business & Professions Code sections 17200, *et seq*. ("UCL"), Violation of California False Advertising Law – Business and Professions Code section 17500, et seq., Breach of Implied Warranty of Merchantability (Song-Beverly Consumer Warranty Act), Violation of the Magnuson-Moss Warranty Act and Unjust Enrichment, and related claims as stated herein as below. Unless explicitly stated to the contrary, all allegations are based upon information and belief.

## GENERAL ALLEGATIONS

1. This matter involves Toyota's marketing, advertising, sale, lease, and warranting of its hydrogen fuel-cell electric vehicles, specifically the Toyota Mirai (hereinafter "Mirai").

2. The Mirai has two generations: the first, manufactured from 2015 to 2020, and the second from December 2020 to the present. The Mirai is available in two trims, the XLE and the Limited. Both generations and models are collectively referred to as the "Mirai" and are sold and leased exclusively in California.

3. While Toyota sells the Mirai while assuring consumers that hydrogen refueling is available, seamless, and comparable to refueling with gasoline, that is not the case, as there is a shortage of hydrogen fuel, which continues to become more and more difficult to obtain for consumers. This scarcity in the fuel makes the Mirai vehicles inoperable due to refueling difficulties, and renders these vehicles unsafe, unreliable and inoperable.

4. As such, consumers, including Plaintiffs, who have purchased or leased vehicles expecting them to be readily and feasibly refueled, are unable to use their vehicle, have to travel long distances in order to find hydrogen fuel, and in many cases, cannot find it at all resulting in their vehicle not functioning, being towed and/or them having to use other methods of transport.

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*

5. Indeed, Toyota has failed and continues to fail to disclose to its customers, including Plaintiffs, that the hydrogen fueling stations which it promises them are numerous in number frequently are out of fuel, are inoperative due to broken equipment, and/or will not accept fuel cards as payment due to various internal issues.

6. These issues, as well as others, result in Plaintiffs and other Mirai owners to have to travel all around town just to try to find hydrogen fuel for their vehicle.

7. Despite Toyota being aware of these refueling limitations, throughout the relevant period, Toyota and its salespeople tell customers prior to sale and/or lease of its Mirai vehicles that hydrogen fuel is available and that refueling the Mirai is seamless.

8. Moreover, despite its knowledge of the lack of working hydrogen fuel stations and hydrogen fuel for its Mirai vehicles, Toyota has not disclosed these issues in its advertising, marketing, sales, or leases.

9. Indeed, prior to the sale and lease of its Mirai vehicle to customers, Toyota and its employees, including salespeople, fail to disclose and actively conceals the fact that 1) at times hydrogen fuel may be unavailable for days at a time; 2) that filling up the Mirai with hydrogen fuel takes many hours on average; 3) that many times hydrogen fuel pumps freeze up and lock onto the Mirai, resulting in Plaintiffs and other Mirai owners to have to wait over 30 minutes just so the fuel pump can warm up and be removed from the vehicle so that they can drive off; and that 4) the price of hydrogen fuel has drastically increased over the last four years, and as such, Toyota's promise that the Mirai comes with a hydrogen fuel card in the amount of $15,000, which will last for three years or more, is absolutely false.

10. In fact, while in 2022, the price of hydrogen fuel was approximately $13/kg, the price almost tripled to approximately $36/kg in 2024.

11. Plaintiffs and many customers who purchased/leased the Mirai vehicle based their decision partly on the economic benefits of hydrogen being approximately $13/kg, and Toyota's incentive of providing them $15,000 worth of credit for hydrogen fuel, which they were promised would last at least five years.

12. Given the surge in price of the hydrogen fuel just over the last 2-3 years of approximately 200%, which Plaintiffs were never made aware of the possibility, Plaintiffs are no longer able to drive their Mirai vehicles to long distances, and have no choice but to pay out of

pocket for the pricey cost of hydrogen fuel given that their hydrogen card does not last them the five years promised.

13. Moreover, Toyota emphasizes Mirai's advantages over conventional plug-in battery electric vehicles, and boasts to customers wishing to purchase or lease a vehicle about Mirai's longer range and quick refuel times.

14. Toyota preempts fueling concerns with false, deceptive, and/or misleading assurances and incentives, including "free" towing to fueling stations, "complimentary" vehicle rentals, and fueling "credits" at purchase or lease.

15 Additionally, Toyota and its employees, including authorized salespeople, have made misrepresentations to Plaintiffs, and other customers, with regards to the Mirai vehicles' driving range.

16. Specifically, Toyota made numerous misrepresentations through advertisements, marketing material, press releases, promotions, and through its salespersons, as it has stated that the second generation Mirai XLE has up to a 402-mile fuel capacity per tank, while a Mirai Limited has approximately a 357-mile fuel capacity per tank,[1] representations that Plaintiffs relied on in deciding to purchase a Mirai vehicle.

17. However, regardless of whether one owns the XLE trim or the Limited trim, the actual fuel capacity Plaintiffs and other customers of Mirai receive is up to 100-miles less than the promised fuel capacity.

18. All of the representations and omissions above induced Plaintiffs and other consumers to purchase or lease the Mirai. However, these promises have proven insufficient to provide the benefit-of-the-bargain, which is the ownership or lease of an operational passenger vehicle. Indeed, given the various issues with the Mirai vehicle, as well as Mirai's high operating costs, as stated in detail above, the re-sale value of Mirai vehicles have decreased exponentially. In fact, the Toyota Mirai's value retention after five years is only 19.4 percent.[2]

---

[1] *See* https://pressroom.toyota.com/toyota-introduces-second-generation-mirai-fuel-cell-electric-vehicle-as-design-and-technology-flagship-sedan/ (last accessed June 14, 2024).

*See* https://pressroom.toyota.com/advanced-to-the-core-toyota-mirai-offers-an-electrifying-ride/# (last accessed June 14, 2024).

[2] *See* https://www.motortrend.com/features/worst-resale-value-cars/ (last accessed June 14, 2024).

19. As a result of Toyota's unlawful conduct, Plaintiffs and Class members have incurred and continue to incur damages.

**PLAINTIFFS**

20. Plaintiff BRYAN CALUWE is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the State of California. Plaintiff CALUWE purchased a 2022 Toyota Mirai XLE in 2022.

21. Plaintiff SHERVIN SHAHHIAN is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff SHAHHIAN leased a 2021 Toyota Mirai XLE in 2021.

22. Plaintiff LEILA KHAJE HOSEINI is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff KHAJE HOSEINI purchased a 2017 Toyota Mirai XLE in 2021.

23. Plaintiff SOHEIL VAHEDI is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff VAHEDI purchased a 2022 Toyota Mirai XLE in 2022.

**DEFENDANTS**

24. Defendants TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR NORTH AMERICA, INC., and TOYOTA MOTOR CREDIT CORPORATION d.b.a. TOYOTA FINANCIAL SERVICES are corporations incorporated under the laws of the State of California, and are therefore citizens of California.

25. Defendant TOYOTA MOTOR SALES, U.S.A., INC. is responsible for marketing, advertising, sale and distribution of its vehicles, including the Mirai.

26. Defendant TOYOTA MOTOR NORTH AMERICA, INC. is responsible for development, manufacturing, sale, lease and corporate functions of its vehicles, including the Mirai.

27. At all relevant times, Defendants and each of them, inclusive, expected or should have expected that their acts would have consequences within the United States of America including the State of California and including Los Angeles County, as said Defendants derived and derive substantial revenue therefrom.

## JURISDICTION AND VENUE

28. This Court has jurisdiction pursuant to 15 U.S.C. § 1127, 15 U.S.C. § 2310(d)(1) and Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., as well as other federal statutes.

29. The Court has personal jurisdiction over all Defendants because they each have sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper. Defendants have intentionally availed themselves of markets within California through their promotion, distribution, and sale of their vehicles in this State.

30. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## CLASS ACTION ALLEGATIONS

31. As further stated herein as to the following claims, Plaintiffs bring their causes of action on behalf of themselves and all others similarly situated, and certification of this class action is appropriate under California *Code of Civil Procedure* section 382 and California *Civil Code* section 1781, because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members.

32. Plaintiffs seek certification of the following **California Class**: All California citizens who purchased or leased Toyota Mirai vehicles from 2021 to 2024.

33. Excluded from the Class are Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as past and present employees, officers and directors of Defendants. Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

**A.   Commonality**

34. There are questions of law and fact that are common to the claims of Plaintiffs. Among these common questions are the following:

   a. Whether Defendants' representations and/or omissions regarding its Mirai vehicles were fraudulent;

   b. Whether Defendants violated California's Unfair Competition Law by misrepresenting material information to consumers regarding its Mirai vehicles;

c.   Whether Defendants violated California's Unfair Competition Law by concealing material information from consumers regarding its Mirai vehicles;

d.   Whether Defendants violated California's Unfair Competition Law by using uniform, deceptive business practices;

e.   Whether Defendants' conduct violates any of the applicable California consumer protection statutes;

f.   Whether Defendants were unjustly enriched as a result of their conduct;

g.   Whether Class Members have been injured by Defendants' conduct;

h.   Whether, and to what extent, equitable relief and/or other relief should be imposed on Defendants, and, if so, the nature of such relief; and

i.   Whether Mirai vehicles are merchantable;

j.   Whether Defendants' marketing, advertising and promotion of the Mirai vehicles were false and misleading;

k.   Whether Defendants knew, or should have known, that their representations were false and misleading, or that they omitted material information;

**B.   Numerosity**

l.   The members of the Class are so numerous that separate joinder of each member is impracticable. Plaintiffs are informed and believe that in the County of Los Angeles alone, the members of the Class would easily exceed the minimum numbers to satisfy this requirement.

**C.   Typicality**

m.   Plaintiffs' claims are typical of the claims of the Class since each of the Plaintiffs was subject to the same or similar practices by Defendants, as was each member of the Class. Plaintiffs and Class members were injured in the same manner by Defendants' course of conduct alleged herein. Plaintiffs and all Class members have the same claims against Defendants' relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class Members. Plaintiffs and all Class members sustained monetary and economic injuries arising out of Defendants' conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

n.   The core issues which predominate over all the other issues in the litigation involve Defendants' unfair, unlawful, negligent and fraudulent practices discussed above.

  o. Upon information and belief, there has never been a prior lawsuit certified as a class on behalf of Plaintiffs based on the allegations in this Complaint.

**D. Adequacy of Representation**

  p. Plaintiffs will fairly and adequately protect the interests of the Class and are committed to the vigorous prosecution of this action. They have retained competent counsel, experienced in litigation of this nature, to represent them and members of the Class.  There is no hostility between Plaintiffs and the unnamed Class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

  q. To prosecute this case, Plaintiffs have chosen the law firm of Beverly Hills Trial Attorneys, P.C., whose attorneys have represented plaintiffs in class actions and as private attorneys general in bringing public interest actions.

**E. Superiority**

  r. The questions of law or fact common to the claims of Plaintiffs and of each Class member predominate over any questions of law or fact affecting only individual members of the Class.  All claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" representations by Defendants and other acts constituting negligence, unfair competition under the UCL, and fraudulent misrepresentations.

  s. Common issues predominate when as here, liability can be determined on a class-wide basis, even when there are some individualized damages.

  t. As a result, when determining whether common questions predominate, courts focus on the liability issue and if the liability issue is common to the class as in the case at bar, common questions are held to predominate over individual questions.

  u. Since all claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" failures by Defendants and other unfair competition laws under the UCL, the predominance requirement needed for class action treatment is satisfied.

  v. A class action is superior to thousands of individual actions in part because of the non-exhaustive factors listed below:

    a. Joinder of all class members would create extreme hardship and inconvenience for the affected consumers because of their immense geographical dispersion.

    b. It is highly unlikely that individual Plaintiffs would shoulder the burden of this vast and complex litigation as many are simply too poor or uneducated about Defendants' actions to bring separate actions;

    c. The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

    d. Individual suits would not be cost effective. The costs to individual Plaintiffs in a collective action are lowered through the pooling or resources and by limiting the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity; and

    e. The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

Defendants have also acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### (FRAUDULENT CONCEALMENT AND MISREPRESENTATION)

35. Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

36. Defendants made false representations of fact to Plaintiffs and concealed material facts from Plaintiffs.

37. Plaintiffs are informed and believe, and on that basis allege, that Defendants deliberately concealed the true facts regarding Defendants' Mirai vehicle, as well as circumstances and facts connected to this vehicle.

38. Plaintiffs are informed and believe, that Defendants either deliberately concealed the true facts known to it or failed to make any reasonable investigation to determine the true facts from which representations were made as to its products and services to determine whether they are true or false, and without having any sufficient basis on which to make any representations, knowingly made false representations, and concealed the truth with regards to its products and services as set forth in the Complaint.

39. Specifically, prior to Plaintiffs' purchase/lease of the Mirai vehicles, Defendants concealed and misrepresented numerous facts. Specifically, they 1) failed to disclose to Plaintiffs and class members that the hydrogen fuel needed to operate the vehicle may be unavailable for

days at a time; 2) failed to disclose that filling up the Mirai with hydrogen fuel takes many hours on average; 3) failed to disclose that many times hydrogen fuel pumps freeze up and lock onto the Mirai, resulting in Plaintiffs and other Mirai owners to have to wait over 30 minutes just so the fuel pump can warm up and be removed from the vehicle so that they can drive off; 4) ) failed to disclose that the price of hydrogen fuel has drastically increased over the last four years, and as such, the hydrogen fuel card in the amount of $15,000 which Toyota provided to Plaintiffs with a promise that it would last at least five years, would actually last much less than the promised period, and failed to disclose that 5) the Mirai vehicles' actual driving range is not the same as what was promised to customers.

40. These representations and promises made to Plaintiffs and the class members were in fact false. If these misrepresentations had not been made to Plaintiffs and the class members to induce them to purchase Defendants' vehicle, Plaintiffs would not have purchased a Toyota Mirai.

41. At the time that these misrepresentations were made to Plaintiffs as alleged in the Complaint, Plaintiffs were ignorant of the falsity of these representations and believed them to be true.

42. Plaintiffs reasonably and justifiably relied upon the intentional misrepresentations and concealments referenced above. This reliance was reasonable and justifiable in that Plaintiffs had no access to the truth underling the misrepresentations, while Defendants had access to said information.

43. If Plaintiffs had been aware of the existence of the facts which were misrepresented and concealed by Defendants, Plaintiffs would not have proceeded forward with purchasing a Toyota Mirai.

44. As a direct and proximate result of Defendants' misrepresentations and concealments, Plaintiffs have suffered and continues to suffer emotional and physical injuries as well as damages, including incidental and consequential damages, in an amount to be established at trial, plus interest at the legal rate. As a further proximate result of such conduct, Plaintiffs have incurred reasonable attorneys' fees.

45. Defendants engaged in the acts alleged above with a willful, conscious and/or reckless disregards of Plaintiffs' rights and with willful, conscious or reckless disregard for the consequences of such conduct to Plaintiffs. These acts were committed with the intent to vex, injure or annoy Plaintiffs and as such constitute oppression, fraud and malice under California

Civil Code §3294. Accordingly, Plaintiffs are entitled to and hereby requests punitive damages in a sum to be proven at trial to deter Defendant from so acting in the future.

## SECOND CAUSE OF ACTION

### (Violation of *Business and Professions Code* sections 17200, *et seq.*)

46. Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

47. Plaintiffs, pursuant to *Business and Professions Code* section 17204, bring this cause of action on behalf of themselves and as a private attorneys general.

48. *Business and Professions Code* section 17200, *et seq.*, also known as the Unfair Competition Law, defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. The Unfair Competition Law imposes strict liability. Plaintiffs need not prove that Defendants intentionally or negligently engaged in unlawful, unfair or fraudulent business practices – but only that such practices occurred.

*"Unlawful" Prong*

49. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

50. As detailed in Plaintiffs' Cause of Action below, California *Civil Code* sections 1750, et seq., prohibits a business from engaging in sales practices that are deceptive or misrepresentations when offering goods and services to the general public.

51. Defendants' unlawful business practices are ongoing, and unless enjoined under *Business & Professions Code* section 17203, and/or under section 17535, are likely to continue to deceive other members of the general public at the expense of Defendants' competitors.

52. Defendants violated Cal. Bus. & Prof. Code sections 17200, *et seq*. by engaging in unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertising, including:

- Knowingly and intentionally concealing and failing to disclose to Plaintiffs and class members that the hydrogen fuel needed to operate the vehicle may be unavailable for days at a time;
- Knowingly and intentionally concealing and failing to disclose to Plaintiffs and class

      members that filling up the Mirai with hydrogen fuel takes many hours on average

- Knowingly and intentionally concealing and failing to disclose to Plaintiffs and class members that many times hydrogen fuel pumps freeze up and lock onto the Mirai, resulting in Plaintiffs and other Mirai owners to have to wait over 30 minutes just so the fuel pump can warm up and be removed from the vehicle so that they can drive off
- Knowingly and intentionally concealing and failing to disclose to Plaintiffs and class members that the price of hydrogen fuel will increase drastically, and as such, the hydrogen fuel card in the amount of $15,000 which Toyota provided to Plaintiffs with a promise that it would last at least five years, would actually last much less than the promised period
- Knowingly and intentionally concealing and failing to disclose to Plaintiffs and class members that the Mirai vehicles' actual driving range is not the same as what was promised to them

**"Unfair" Prong**

53. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

54. Defendants' business practices are unfair under the UCL because Defendants have acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and the Class Members, as described above.

55. Further, the impact of the practice against Plaintiffs and the Class Members far outweighs any possible justification or motive on the part of Defendants. The impact on Plaintiffs and the Class Members has been described. Defendants can have no possible justification for engaging in immoral, unethical and substantially injurious act of charging Plaintiffs and the Class Members through misleading and deceptive conduct. Furthermore, Plaintiffs and the Class Members could not have reasonably avoided this injury because they relied on Defendants' advertising as to the quality and characteristics of the services being sold, as all consumers who rely on the verity of product advertising must do. Defendants' false advertising is also violative of public policy.

56. The harm to Plaintiffs and Class members outweighs the utility of Defendants'

practices. There were reasonably available alternatives to further Defendants' legitimate business interests other than the misleading and deceptive conduct described herein.

***"Fraudulent" Prong***

57. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

58. Defendants' acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiffs into purchasing a product which is inoperable, unsafe and unreliable. Defendants' acts and practices are highly likely to deceive and have deceived members of the consuming public.

59. Defendants' business practices, as alleged herein, also constitute fraudulent conduct because Defendants did not deliver the product they advertised. Defendants' representations and omissions in California were material because they were likely to deceive reasonable consumers.

60. Plaintiffs and Class Members did not know about Defendants' improper practices when they purchased/leased Defendants' service. Accordingly, Defendants should not have omitted and/or misrepresented the facts surrounding their products.

61. Defendants omitted and misrepresented material information pertaining to their products, and among other things, convinced Plaintiffs and Class Members to purchase these products, and to otherwise ensure that Plaintiffs and Class Members would not discover Defendants' underlying fraud regarding its omissions and misrepresentations regarding its Mirai vehicle. As a result, Defendants violated Cal. Penal Code § 502.

62. Defendant's fraud led to consumers paying for a product that they would not have paid for if they knew the truth about it.

63. As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent acts and practices, Plaintiffs and Class Members were injured and lost money. They did not receive the benefit of the bargain in purchasing these Mirai vehicles, and they spent their own time and money dealing with various situations that arose as a result of Defendants' practices.

64. Defendants acted intentionally, knowingly, and maliciously in violation of California's Unfair Competition Law.

65. Plaintiffs and Class Members seek all monetary and non-monetary relief allowed

by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices, declaratory relief, reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5, injunctive relief, and other appropriate equitable relief.

66. In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiffs also seek, in addition to damages, restitution and other equitable relief, to recover attorney fees under (i) section 1021.5 of the *Code of Civil Procedure*, and/or (ii) the "common fund" doctrine available to prevailing Plaintiffs who confer a benefit on the general public.

### THIRD CAUSE OF ACTION
### (VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW)

67. Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

68. California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

69. Defendants' conduct as alleged herein violates Cal. Bus. & Prof. Code § 17500 by intentionally making and disseminating statements to consumers in California and the general public concerning Defendants' vehicles, as well as circumstances and facts connected to such products, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendants to be untrue or misleading. Defendants have also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers and to the public as part of a plan or scheme with intent not to sell those products as advertised.

70. Defendants violated Cal. Bus. & Prof. Code § 17500 by, *inter alia*: 1) failing to disclose to Plaintiffs and class members that the hydrogen fuel needed to operate the vehicle may be unavailable for days at a time; 2) that filling up the Mirai with hydrogen fuel takes many hours

on average; 3) that many times hydrogen fuel pumps freeze up and lock onto the Mirai, resulting in Plaintiffs and other Mirai owners to have to wait over 30 minutes just so the fuel pump can warm up and be removed from the vehicle so that they can drive off; and that 4) the price of hydrogen fuel has drastically increased over the last four years, and as such, the hydrogen fuel card in the amount of $15,000 which Toyota provided to Plaintiffs with a promise that it would last at least five years, would actually last much less than the promised period, and that 5) the Mirai vehicles' actual driving range is not the same as what was promised to customers.

71. Defendants' actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

72. Plaintiffs and the members of the Classes were deceived by and relied on Defendants' statements and omissions to their detriment. Moreover, there is a strong probability that other consumers and members of the public were also or are likely to be deceived as well. Any reasonable consumer would be misled by Defendants' false and misleading statements and material omissions. Plaintiffs and other members of the Classes did not learn of all of the abovementioned issues until after they had already purchased and/or leased a Mirai vehicle.

73. Plaintiffs and the Class lost money as a result of Defendants' violations because they would not have purchased a Mirai vehicle if the true facts about these vehicles were known to them.

74. As a result of Defendants' misconduct pursuant to Cal. Bus. & Prof. Code § 17500, Plaintiffs and the Class are entitled to individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendants from continuing with their false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendants' relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

**(BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (SONG-BEVERLY CONSUMER WARRANTY ACT)**

75. Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

76. Toyota was at all relevant times a "merchant" as defined by Cal. Com. Code §

2314. Specifically, Defendants were in privity with Plaintiffs and class members at the time they purchased/leased the Mirai vehicles given that Toyota dealerships who sold or leased the subject vehicles were authorized agents of Defendants. Moreover, Defendants controlled and directed the marketing of its vehicles through its dealerships.

77. Additionally, a warranty that the Mirai vehicles were in merchantable condition for the purpose of driving them is implied by law in the instant transactions.

78. However, these Mirai vehicles when sold and/or leased to Plaintiffs and the proposed class members, were not in merchantable condition and were not fit for the ordinary purpose for which they are used. Toyota sells the Mirai while assuring consumers that hydrogen refueling is available, seamless, and comparable to refueling with gasoline, that is not the case, as there is a shortage of hydrogen fuel, which continues to become more and more difficult to obtain for consumers. This scarcity in the fuel makes the Mirai vehicles inoperable due to refueling difficulties, and renders these vehicles unsafe, unreliable and inoperable.

79. Defendants knew about these issues with the Mirai vehicles at the time that it sold or leased these vehicles to customers. Furthermore, Defendants have known about these issues given the number of complaints they have received from Plaintiffs as well as from other class members both in person at their dealerships, and by other means.

80. Defendants cannot disclaim or limit the implied warranty of merchantability as doing so would be unconscionable and unenforceable. Specifically, any purported warranty limitation is unenforceable because Defendants sold and leased an unusable vehicle without informing consumers about its risks and shortcomings. As such, a large disparity in bargaining power existed between Defendants, Plaintiffs and Class members.

81. Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

82. As a direct and proximate result of Defendants' breach of the warranty of merchantability, Plaintiffs and class members, have suffered and continue to suffer damages, including incidental and consequential damages, in an amount to be established at trial, plus interest at the legal rate.

# FIFTH CAUSE OF ACTION

## (VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT)

83. Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

84. The subject vehicles are "consumer products" under the MMWA. 15 U.S.C. § 2301(1).

85. Plaintiffs and Class members are "consumers" under the MMWA. 15 U.S.C. § 2301(3).

86. Defendants are "suppliers" and "warrantors" under the MMWA. 15 U.S.C. §2301(4)-(5).

87. Through their implied warranties, Defendants warranted to Plaintiffs and Class members that the vehicles they purchased were free from defects, of merchantable quality, and fit for the ordinary purposes for which a vehicle is used.

88. Defendants breached and refused to honor these implied promises. As a result of the various issues identified above, the vehicles are inoperable and fail to perform in accordance with their ordinary and intended purposes.

89. Defendants have been given reasonable opportunities to cure their breaches of warranty. In fact, Defendants have had actual knowledge and ample notice that the vehicles are defective as detailed above, but have failed to provide an adequate remedy and have continued to sell these defective vehicles to consumers.

90. For the reasons set forth in paragraphs 113, *supra*, Defendants' durational limitation on implied warranties is unconscionable and unenforceable under 15 U.S.C. § 2308(b).

91. The amount in controversy for purposes of Plaintiffs' individual claims exceeds $25. The amount in controversy in this action exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be adjudicated in the suit.

92. As a direct and proximate result of Defendants' breaches of its implied warranty pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

93. Plaintiffs also seek costs and expenses, including reasonable attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

## SIXTH CAUSE OF ACTION

### (Unjust Enrichment)

94. Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

95. Plaintiffs and Class Members were enticed to purchase Defendants' Mirai vehicles, which were not as Defendants represented them to be.

96. Had Plaintiffs and the Class known of the fact that 1) at times hydrogen fuel may be unavailable for days at a time; 2) that filling up the Mirai with hydrogen fuel takes many hours on average; 3) that many times hydrogen fuel pumps freeze up and lock onto the Mirai, resulting in Plaintiffs and other Mirai owners to have to wait over 30 minutes just so the fuel pump can warm up and be removed from the vehicle so that they can drive off; 4) the price of hydrogen fuel has drastically increased over the last four years, and as such, Toyota's false promise that the Mirai comes with a hydrogen fuel card in the amount of $15,000 which will last for five years or more is false, they would not have purchased Defendants' Mirai vehicles, and that 5) the Mirai vehicles' actual driving range is not the same as what was promised to customers

97. Accordingly, Plaintiffs and Class Members were damaged, and Defendants were unjustly enriched, given that they misrepresented their product to Plaintiffs and defrauded them into purchasing said product.

98. Furthermore, Defendants' conduct was willful, intentionally deceptive, and intended to cause economic injury to Plaintiffs and the Class. Defendants are therefore liable to pay punitive damages.

99. Plaintiffs and Class Members are entitled to damages in the amount Defendants were unjustly enriched, to be determined at trial.

### PRAYER FOR RELIEF

100. Plaintiffs BRYAN CALUWE, an individual, SHERVIN SHAHHIAN, an individual, LEILA KHAJE HOSEINI, an individual, SOHEIL VAHEDI, an individual, and on behalf of all others similarly situated pray for relief and judgment against Defendants as follows:

  (a) An order certifying the Class and designating BRYAN CALUWE, SHERVIN SHAHHIAN, LEILA KHAJE HOSEINI, and SOHEIL VAHEDI as Class Representatives and their counsel as Class Counsel;

(b) Awarding Plaintiffs and the proposed Class members actual or compensatory damages according to proof;

(c) Awarding restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class members as a result of their unlawful, unfair and fraudulent business practices described herein;

(d) Awarding declaratory and injunctive relief as permitting by law or equity to individual Plaintiffs, including enjoining Defendants from continuing the unlawful practices set forth herein, and directing Defendants to identify, with Court supervision, victims of their misconduct and pay them all money they are required to pay;

(e) Exemplary and punitive damages sufficient to punish and deter the Defendants and others from future wrongful practices;

(f) Pre-judgment and post-judgment interest;

(g) Awarding attorneys' fees and costs; and

(h) Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all issues raised in this Complaint.

DATED: July 10, 2024                    **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**

*/s/ Azar Mouzari*
Azar Mouzari, Esq.
Nilofar Nouri, Esq.