Azar Mouzari, SBN 263461
Nilofar Nouri, SBN 311871
**BEVERLY HILLS TRIAL ATTORNEYS, P.C.**
9350 Wilshire Blvd., Suite 203
Beverly Hills, California 90212
Tel: 310-627-8648
Fax: 310-627-8642
Email: azar@bhtrialattorneys.com
Email: nilofar@bhtrialattorneys.com

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN CALUWE, an individual; SHERVIN SHAHHIAN, an individual; LEILA KHAJE HOSEINI, an individual; SOHEIL VAHEDI, an individual; IRVING ADLEN, an individual; RYAN KISKIS, an individual; ALVIN MENDOZA, an individual; KOUROSH ELIAHOZADEH, an individual; ADNAN AGBOATWALLA, an individual; SAMIN EFTEKHARI, an individual; JOSEPH KIM, an individual; HIWOT MENGISTU, an individual; IRINA MELIKSETYAN, an individual; ANGELA ROSE NUNO, an individual; JUAN CARRANZA DELGADO, an individual; DAWAR NAQVI, an individual; DIEGO TOSCANO, an individual; MOHSEN HASS, an individual; MARLA R. DREYFUS, an individual; TRILOK DESAI, an individual; RAY CHAKMAKCHI, an individual; SHUK L. CHAN, an individual; TIMOTHY J. SHEENA, an individual; KEN SOLOMON, an individual; PETER SNELL, an individual; ANDREW VIEYRA, an individual; DORIAN DARIUS FARROKHI, an individual; JONATHAN DEKELAITA, an individual; ERIC DANG, an individual; | Case No.:  2:24-CV-05819-AB-RAO <br><br> **FOURTH AMENDED COMPLAINT FOR DAMAGES** <br><br> **(1) FRAUDULENT CONCEALMENT AND MISREPRESENTATION** <br> **(2) NEGLIGENT MISREPRESENTATION** <br> **(3) VIOLATION OF THE BUSINESS & PROFESSIONS CODE SECTIONS 17200 ET SEQ. ("UCL")** <br> **(4) VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW – BUSINESS & PROFESSIONS CODE SECTIONS 17500 ET SEQ.** <br> **(5) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (SONG-BEVERLY CONSUMER WARRANTY ACT)** <br> **(6) VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT** <br> **(7) UNJUST ENRICHMENT** |

1

LYNNE DANG, an individual; AARON )
HAN, an individual; MITCH PHAM, an )
individual; VU DUC NGUYEN, an )
individual; CHARLES JOHNSON, an )
individual; JOSE MARTINEZ, an )
individual; HERIBERTO GONZALEZ, an )
individual; MICHAEL D. PHILIPS, an )
individual; JENNY LI, an individual; )
HAITAO LI, an individual; TYMAN )
EUGENE SMALL JR., an individual; JIM )
PETER PRINCE, an individual; ANDREA )
NOAH, an individual; GILBERT SABALA, )
an individual; KITJA HORPAYAK, an )
individual; PEILIN WU, an individual; )
JAYSHREE MAKHIJANI, an individual; )
SAEED AMINI RAOUFPOUR, an )
individual; PATRICK CYCCONE JR., an )
individual; MEJIA SEARLES ARNALDO, )
an individual; KI RYUN SHIN, an )
individual; JESSICA MORALES, an )
individual; SHANTALA KONAKANCHI, )
an individual; ARAZ A. ARBAB, an )
individual; SHANTIA HASSANSHAHI, an )
individual; JAMES ASTUNO, an individual; )
MARK COMPTON, an individual; )
BHARGAV DABHI, an individual; )
FITZHUGH SWAIN, an individual; KOYA )
ANDERSON, an individual; YOUSOF )
FOTOVAT, an individual; EDWARD )
BROWN, an individual; DEBRA BARD )
JAVERBAUM, an individual; LYDIA J. )
SCHNITTA, an individual; WEIGUO ZHU, )
an individual; SHEN LING, an individual; )
JEFFREY S. WHITCOMB, an individual; )
WAQAR A. SIDDIQUI, an individual; )
EDBERTO A. RECINOS, an individual; )
EDWARD HERNANDEZ, an individual; )
OSCAR GARCIA NEVAREZ, an )
individual; TRITH DADLANI, an )
individual; AVA BAREKAT, an individual; )

2

JEROME LOUIS LUCERA, an individual; )
VIVIANA GONZALEZ, an individual; )
DANIEL VALENZUELA, an individual; )
JOSHUA ROBINSON, an individual; )
JAMES KRUG, an individual; MAURICIO )
PIERRE VASQUEZ, an individual; )
MARVIN ALEXANDER ORELLANA, an )
individual; RICHARD COLLETT, an )
individual; MANFRED REMES, an )
individual; KARIMULLAH BAYANZAY, )
an individual; LAKIESHA MILNER, an )
individual; DAVID RAD, an individual, )
DANIEL ATKINS, an individual; DAVID )
A. BAKER, an individual; MARCUS D. )
MOORE, an individual; CAREN )
ARSENEAULT, an individual; NANCY E. )
MCCORD, an individual; DAVID P. )
SINGERMAN, an individual; JAY S. )
FLEMING, an individual; WILLIAM )
BAKER, an individual; MICHAEL L. )
SANDS, an individual; DIANE MARQUEZ, )
an individual; DANIEL CALDERON, an )
individual; IAN ETHAN VLOKE-WURTH, )
an individual; MARIA VEGA, an individual; )
DANIEL M. POPPERS, an individual; )
JOHN MOORE, an individual; SAYED )
MOJADIDI, an individual; RUBEN )
OROZCO, an individual; GAREGIN )
MKHITARYAN, an individual; )
MATTHEW R. LESSINGER, an individual; )
CHRISTOPHER RUIZ, an individual; )
GARRY MKRTCHYAN, an individual; )
LAURA BEHJAN, an individual; GINA )
TOWNSEND, an individual; EHAN GOOD, )
an individual; MANU NOMURA an )
individual; MOHAMMAD NAJAFI, an )
individual; FERDINAND CALINGASAN, )
an individual; MICHAEL MEDVEDEV, an )
individual; JASMINE J. WALKER, an )
individual; SYLVIA CHOY, an individual; )

---

3

LAYNE CHRISTOPHER MOREY, an )
individual; ASHIA SOUDER, an individual; )
KEVIN MANCHA, an individual; )
CYNTHIA FARRELLY GESNER, an )
individual; ERIK PENA, an individual; )
ANDY MATTI, an individual; ROBERT )
KRANTZ, an individual; RICHARD )
BALINT, an individual; BOBBIE M. )
MENDOZA, an individual; NAJIA )
SARWARI, an individual; RAYMOND E. )
COLLINS, an individual; GLORIA E. )
VRANJICAN, an individual; MICHELLE )
CARTER, an individual; FRANK )
TRUONG, an individual; UT ANNA )
VUONG, an individual; ROMULO E. )
HUEZO, an individual; HOOMAN )
MELAMED, an individual; PETER )
COHEN, an individual; AMBER NGUYEN, )
an individual; MARK MANDEL, an )
individual; VIRGINIA L. THIELE, an )
individual; JAMIEE HUSTED, an )
individual; ONUR KARACANLI, an )
individual; SERKAN SIYI, an individual; )
BEVERLY BROCK, an individual; )
SATWANT K. RAI, an individual; and on )
behalf of all others similarly situated, )
                                          )
                    Plaintiffs,           )
                                          )
vs.                                       )
                                          )
TOYOTA MOTOR SALES, U.S.A., INC., a )
California Corporation, TOYOTA MOTOR )
NORTH AMERICA, INC., a California )
Corporation, and DOES 1 through 20 )
inclusive,                                )
                                          )
                    Defendants.           )
                                          )
_____ )

---

4

*PLAINTIFFS' FOURTH AMENDED COMPLAINT*
*[CLASS-ACTION]*

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………….........…...….5

GENERAL ALLEGATIONS…………………………………………….…...…..8

PARTIES……………………………………………………………….…….....…22

      I.    Plaintiffs…………………………………………...…………22

      II.   Defendants………………………………….…….....…137

JURISDICTION AND VENUE………………………………………...…….137

CLASS ACTION ALLEGATIONS…………………………….....………..138

CAUSES OF ACTION…………………………………...…………..…141

     COUNT I: FRAUDULENT CONCEALMENT AND MISREPRESENTATION.......141

     COUNT II: NEGLIGENT MISREPRESENTATION………………………………….142

     COUNT III: VIOLATIONS OF THE BUSINESS & PROFESSIONS CODE

     SECTIONS 17200 ET SEQ. ("UCL")………………………………….......143

     COUNT IV: VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW –

     BUSINESS & PROFESSIONS CODE SECTIONS 17500 ET SEQ………………….146

     COUNT V: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

     (SONG-BEVERLY CONSUMER WARRANTY ACT)………………….…...…..148

     COUNT VI: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT.......151

     COUNT VII: UNJUST ENRICHMENT………………………………………..152

PRAYER FOR RELIEF…………………………………….…………….......153

JURY TRIAL DEMAND…………………………………………….......154

*PLAINTIFFS' FOURTH AMENDED COMPLAINT*
*[CLASS-ACTION]*

COME NOW Plaintiffs BRYAN CALUWE, an individual; SHERVIN SHAHHIAN, an individual; LEILA KHAJE HOSEINI, an individual; SOHEIL VAHEDI, an individual; IRVING ADLEN, an individual; RYAN KISKIS, an individual; ALVIN MENDOZA, an individual; KOUROSH ELIAHOZADEH, an individual; ADNAN AGBOATWALLA, an individual; SAMIN EFTEKHARI, an individual; JOSEPH KIM, an individual; HIWOT MENGISTU, an individual; IRINA MELIKSETYAN, an individual; ANGELA ROSE NUNO, an individual; JUAN CARRANZA DELGADO, an individual; DAWAR NAQVI, an individual; DIEGO TOSCANO, an individual, MOHSEN HASS, an individual, MARLA R. DREYFUS, an individual, TRILOK DESAI, an individual, RAY CHAKMAKCHI, an individual, SHUK L. CHAN, an individual, TIMOTHY J. SHEENA, an individual, KEN SOLOMON, an individual, PETER SNELL, an individual, ANDREW VIEYRA, an individual, DORIAN DARIUS FARROKHI, an individual, JONATHAN DEKELAITA, an individual, ERIC DANG, an individual, LYNNE DANG, an individual, AARON HAN, an individual, MITCH PHAM, an individual, VU DUC NGUYEN, an individual, CHARLES JOHNSON, an individual, JOSE MARTINEZ, an individual, HERIBERTO GONZALEZ, an individual, MICHAEL D. PHILIPS, an individual, JENNY LI, an individual, HAITAO LI, an individual, TYMAN EUGENE SMALL JR., an individual, JIM PETER PRINCE, an individual, ANDREA NOAH, an individual, GILBERT SABALA, an individual, KITJA HORPAYAK, an individual, PEILIN WU, an individual, JAYSHREE MAKHIJANI, an individual, SAEED AMINI RAOUFPOUR, an individual, PATRICK CYCCONE JR., an individual, MEJIA SEARLES ARNALDO, an individual, KI RYUN SHIN, an individual, JESSICA MORALES, an individual, SHANTALA KONAKANCHI, an individual, ARAZ A. ARBAB, an individual, SHANTIA HASSANSHAHI, an individual, JAMES ASTUNO, an individual, MARK COMPTON, an individual, BHARGAV DABHI, an individual, FITZHUGH SWAIN, an individual, KOYA ANDERSON, an individual, YOUSOF FOTOVAT, an individual, EDWARD BROWN, an individual, DEBRA BARD JAVERBAUM, an individual, LYDIA J. SCHNITTA, an individual, WEIGUO ZHU, an individual, SHEN LING, an individual, JEFFREY S. WHITCOMB, an individual, WAQAR A. SIDDIQUI, an individual, EDBERTO A. RECINOS, an individual, EDWARD HERNANDEZ, an individual, OSCAR GARCIA NEVAREZ, an individual, TRITH DADLANI, an individual, AVA BAREKAT, an individual, JEROME LOUIS LUCERA, an individual, VIVIANA GONZALEZ, an individual, DANIEL VALENZUELA, an individual, JOSHUA ROBINSON,

an individual, JAMES KRUG, an individual, MAURICIO PIERRE VASQUEZ, an individual, MARVIN ALEXANDER ORELLANA, an individual, RICHARD COLLETT, an individual, MANFRED REMES, an individual, KARIMULLAH BAYANZAY, an individual, LAKIESHA MILNER, an individual, DAVID RAD, an individual, DANIEL ATKINS, an individual, DAVID A. BAKER, an individual, MARCUS D. MOORE, an individual, CAREN ARSENEAULT, an individual, NANCY E. MCCORD, an individual, DAVID P. SINGERMAN, an individual, JAY S. FLEMING, an individual, WILLIAM BAKER, an individual, MICHAEL L. SANDS, an individual; DIANE MARQUEZ, an individual; DANIEL CALDERON, an individual, IAN ETHAN VLOKE-WURTH, an individual, MARIA VEGA, an individual, DANIEL M. POPPERS, an individual, JOHN MOORE, an individual, SAYED MOJADIDI, an individual, RUBEN OROZCO, an individual, GAREGIN MKHITARYAN, an individual, MATTHEW R. LESSINGER, an individual, CHRISTOPHER RUIZ, an individual, GARRY MKRTCHYAN, an individual, LAURA BEHJAN, an individual, GINA TOWNSEND, an individual, EHAN GOOD, an individual, MANU NOMURA an individual, MOHAMMAD NAJAFI, an individual, FERDINAND CALINGASAN, an individual, MICHAEL MEDVEDEV, an individual, JASMINE J. WALKER, an individual, SYLVIA CHOY, an individual, LAYNE CHRISTOPHER MOREY, an individual, ASHIA SOUDER, an individual, KEVIN MANCHA, an individual, CYNTHIA FARRELLY GESNER, an individual, ERIK PENA, an individual, ANDY MATTI, an individual, ROBERT KRANTZ, an individual, RICHARD BALINT, an individual, BOBBIE M. MENDOZA, an individual, NAJIA SARWARI, an individual, RAYMOND E. COLLINS, an individual, GLORIA E. VRANJICAN, an individual, MICHELLE CARTER, an individual, FRANK TRUONG, an individual, UT ANNA VUONG, an individual, ROMULO E. HUEZO, an individual, HOOMAN MELAMED, an individual, PETER COHEN, an individual, AMBER NGUYEN, an individual, MARK MANDEL, an individual, VIRGINIA L. THIELE, an individual, JAMIEE HUSTED, an individual, ONUR KARACANLI, an individual, SERKAN SIYI, an individual, BEVERLY BROCK, an individual, SATWANT K. RAI, an individual, and all others similarly situated (collectively "Plaintiffs"), and through their counsel of record, Beverly Hills Trial Attorneys, P.C., file this class action complaint against TOYOTA MOTOR SALES, U.S.A., INC. and TOYOTA MOTOR NORTH AMERICA, INC. ("TOYOTA"), and DOES 1 through 20, inclusive (collectively "Defendants"), seeking damages and relief on behalf of themselves and for all others similarly situated for: Fraudulent

---

7

Concealment and Misrepresentation, Negligent Misrepresentation, Violation of California's Unfair Competition Law - Business & Professions Code sections 17200, *et seq*. ("UCL"), Violation of California False Advertising Law – Business and Professions Code section 17500, et seq., Breach of Implied Warranty of Merchantability (Song-Berly Consumer Warranty Act), Violation of the Magnuson-Moss Warranty Act and Unjust Enrichment, and related claims as stated herein as below. Unless explicitly stated to the contrary, all allegations are based upon information and belief.

## **GENERAL ALLEGATIONS**

1.      This matter involves Toyota's marketing, advertising, sale, lease, and warranting of its hydrogen fuel-cell electric vehicles, specifically the Toyota Mirai (hereinafter "Mirai").

2.      The Mirai has two generations: the first, manufactured from 2015 to 2020, and the second from December 2020 to the present. The Mirai is available in two trims, the XLE and the Limited. Both generations and models are collectively referred to as the "Mirai" and are sold and leased exclusively in California.

3.      Toyota sells the Mirai while assuring consumers that hydrogen refueling is available, seamless, and comparable to refueling with gasoline, but that is not the case, as there is a shortage of hydrogen fuel, which continues to become more and more difficult to obtain for consumers. This scarcity in the fuel as well as fuel stations being down for weeks at a time makes the Mirai vehicles inoperable due to refueling difficulties, and renders these vehicles unsafe, unreliable and inoperable.

4.      As such, consumers, including Plaintiffs, who have purchased or leased vehicles expecting them to be readily and feasibly refueled, are unable to use their vehicle, have to travel long distances in order to find hydrogen fuel, and in many cases, cannot find it at all resulting in their vehicle not functioning, being towed and/or them having to use other forms of transportation.

5.      Indeed, Toyota has failed and continues to fail to disclose to its customers, including Plaintiffs, that the hydrogen fueling stations which it promises them are numerous in number frequently are out of fuel, are inoperative due to broken equipment, and/or will not accept fuel cards as payment due to various internal issues.

### **Toyota's Pre-Sale Knowledge and Failure to Disclose**

6.      On information and belief, hydrogen fueling stations maintained electronic records of each hydrogen-filling event, which were continuously date-stamped and recorded various

---

8

parameters, including the pressure before filling, the pressure when full, the time the fueling began and ended, and a measurement called "State of Charge" (SOC) that indicated how much hydrogen had actually been pumped into a given customer's tank.

7.     Moreover, Toyota deployed independent contractors to hydrogen fueling stations equipped with laptops and other specialized hardware to extract detailed fueling data. These records provided a detailed history of fueling limitations and station performance issues.

8.     These contractors conducted on-site testing using Toyota Mirai vehicles to verify fueling station performance, confirming real-world fueling conditions firsthand. The collected data was then transmitted to Toyota engineers, who analyzed it alongside fuel station operators to assess station functionality and reliability.

9.     As a result of this systematic data collection, Toyota had exclusive and continuous access to information regarding incomplete fueling, prolonged station outages, and recurring maintenance closures.

10.     Since at least 2016, Toyota has maintained a comprehensive internal record of these deficiencies, giving it superior knowledge of the widespread issues affecting Mirai owners. Despite possessing this data, Toyota failed to disclose these fueling limitations to consumers, depriving them of critical information that directly impacted their ability to operate their vehicles as advertised. Toyota, despite its representations regarding the Mirai's advertised fuel capacity and range, was aware of systemic limitations at hydrogen fueling stations.

11.     Moreover, Toyota had actual knowledge that the advertised mileage range of the Mirai vehicles was false and misleading. Numerous customers lodged complaints directly with Toyota, reporting that the vehicles routinely failed to achieve the represented mileage per full tank and that fuel outages were a regular and foreseeable occurrence. Despite being aware of these widespread and recurring complaints, Toyota continued to market the vehicles with inflated mileage claims and omitted any disclosure regarding the systemic limitations of the hydrogen fuel infrastructure, thereby knowingly misleading consumers.

12.     Toyota personnel periodically visited hydrogen stations to obtain fueling data directly related to Mirai vehicles. This data included repeated instances where Mirai customers were unable to achieve a full fill, demonstrating a consistent shortfall in fuel capacity.

13.     Toyota knew that the vast majority and likely all retail customers having Mirai vehicles were never able to fill their hydrogen tanks to 100% of SOC fueling capacity. Instead,

the typical full fill on an empty tank for a Mirai vehicle was approximately 4.0 kg of hydrogen, significantly below the advertised capacity of a tank size of 5.6 kg of hydrogen.

14.     Three primary factors contributed to this fueling shortfall, all of which Toyota had full knowledge of: (1) the unavoidable presence of residual fuel in the tank, (2) the negative impact of higher ambient temperatures on fueling capacity, and (3) the inability of hydrogen station compressors to maintain adequate pressure during heavy periods of station use.

15.     Even when customers adhered to Toyota's recommendation of waiting 15 minutes between fueling attempts, they still frequently received only partial fills, thereby limiting their effective driving range.

**Toyota's Duty to Disclose**

16.     Toyota had a duty to disclose these material facts to consumers prior to the sale of the Mirai vehicles given that it was material to a consumer's purchasing decision, particularly when that information is within the manufacturer's exclusive knowledge.

17.     Toyota had direct access to fueling station data and knew that its vehicles could not achieve their advertised fueling capacity under real-world conditions. Indeed, Toyota had exclusive knowledge of these facts which were not known or reasonably accessible to Plaintiffs and the proposed class.

18.     By failing to disclose this information, Toyota misrepresented the Mirai's capabilities and deprived consumers of the opportunity to make an informed purchasing decision as it actively concealed material facts from Plaintiffs and the proposed class.

19.     Toyota's omissions were not mere oversights but part of a broader pattern of concealing the real-world limitations of hydrogen fueling infrastructure. Reasonable consumers would have found this information material, as the inability to achieve full fills directly impacts the vehicle's range and usability.

20.     Had Toyota disclosed these fueling limitations, consumers would have reconsidered their purchase or demanded solutions to mitigate these known deficiencies. Toyota's failure to disclose this information constitutes a deceptive business practice.

21.     Indeed, fuel availability and infrastructure issues have been pervasive and deeply problematic. Plaintiffs frequently encounter difficulties finding hydrogen stations with working pumps, leading to extended downtimes and long wait times. In some cases, Plaintiffs have had to drive considerable distances—over 60 miles—to locate a functioning station, only to find them

---

*PLAINTIFFS' FOURTH AMENDED COMPLAINT*
*[CLASS-ACTION]*

closed or non-operational. The inconsistency and unreliability of the hydrogen fueling infrastructure have caused significant inconvenience and safety risks, with the constant threat of running out of fuel while traveling.

22.    Despite Toyota being aware of these refueling limitations, throughout the relevant period, Toyota and its salespeople tell customers prior to sale and/or lease of the Mirai vehicles that hydrogen fuel is available and that refueling the Mirai is seamless.

23.    Moreover, despite its knowledge of the lack of working hydrogen fuel stations and hydrogen fuel for its Mirai vehicles, Toyota has not disclosed these issues in its advertising, marketing, sales, or leases.

24.    Indeed, prior to the sale and lease of its Mirai vehicle to customers, Toyota and its employees, including its salespeople, fail to disclose and actively conceal the fact that 1) at times hydrogen fuel may be unavailable for days at a time; 2) that filling up the Mirai with hydrogen fuel takes longer than half an hour on average; 3) that many times hydrogen fuel pumps freeze up and lock onto the Mirai, resulting in Plaintiffs and other Mirai owners to have to wait over 30 minutes just so the fuel pump can warm up and be removed from the vehicle so that they can drive off; and that 4) the price of hydrogen fuel has drastically increased over the last four years, and as such, Toyota's promise that the Mirai comes with a hydrogen fuel card in the amount of $15,000, which will last for many years, is absolutely false.

25.    In fact, while in 2022 the price of hydrogen fuel was approximately $13/kg, the price almost tripled to approximately $36/kg in 2024.

26.    Plaintiffs and many customers who purchased/leased the Mirai vehicle based their decision partly on the economic benefits of the Mirai operating with hydrogen, and Toyota's incentive of providing them $15,000 worth of credit for hydrogen fuel, which they were promised would last many years.

27.    The skyrocketing price of hydrogen fuel has further exacerbated Plaintiffs' grievances. This drastic price increase has disrupted Plaintiffs' financial planning and rendered the cost of operating the vehicle prohibitively expensive. Plaintiffs were misled about the stability and predictability of hydrogen fuel prices, which were critical factors in their purchasing decisions.

28.    Given the surge in price of the hydrogen fuel just over the last 2-3 years of approximately 200%, which was concealed from Plaintiffs and never disclosed, Plaintiffs are no

longer able to drive their Mirai vehicles to long distances, and have no choice but to pay out of
pocket for the pricey cost of hydrogen fuel given that their hydrogen card does not last them the
three to six years promised.

29.    Indeed, Toyota takes deliberate steps to obscure the true cost of hydrogen fuel
from customers considering the purchase of a Mirai vehicle. This critical information is notably
absent from Toyota's advertisements, website, and other forums where potential buyers seek
details about the vehicle from Toyota. In fact, it is evident that Toyota goes out of its way to avoid
providing this essential information.

30.    For example, on Toyota's official website, there is a section specifically designed
to address the cost of hydrogen fuel. However, instead of offering clarity, and providing
straightforward details about hydrogen pricing, Toyota completely avoids answering the question
by emphasizing that each Mirai vehicle comes with a $15,000 complimentary fuel card. While
this may seem like a generous benefit, luring in customers to buy its vehicle, it does little to inform
potential buyers about what they can expect to pay for hydrogen fuel, and the reality of how long
the $15,000 fuel card will last them. Below is a screenshot of Toyota's website:



31.    By focusing on the complimentary fuel card and sidestepping the actual cost of
hydrogen, Toyota leaves customers in the dark about a key factor that could influence their
decision to purchase a Mirai. This lack of transparency and intentional concealment not only

*PLAINTIFFS' FOURTH AMENDED COMPLAINT*
*[CLASS-ACTION]*

makes it difficult for customers to assess the true cost of ownership but also showcases Toyota's lack of commitment to providing honest and complete information to its consumers.

32.    Moreover, Toyota emphasizes Mirai's advantages over conventional plug-in battery electric vehicles and boasts to customers wishing to purchase or lease a vehicle about Mirai's longer range and quick refuel times.

33.    Toyota preempts fueling concerns with false, deceptive, and/or misleading assurances and incentives, including "free" towing to fueling stations, "complimentary" vehicle rentals, and fueling "credits" at purchase or lease.

34.    Additionally, Toyota and its employees, including authorized salespeople, have made misrepresentations to Plaintiffs, and other customers, with regards to the Mirai vehicles' driving range.

35.    Specifically, Toyota made numerous misrepresentations through advertisements, marketing material, press releases, promotions, and through its salespersons, as it has stated that the second generation Mirai XLE has up to a 402-mile fuel capacity per tank, while a Mirai Limited (2021-2023 models) has a 357-mile fuel capacity per tank,[1] while a Mirai Limited 2020 model has a 312-mile fuel capacity per tank, representations that Plaintiffs relied on in deciding to purchase a Mirai vehicle.

36.    However, regardless of the trim owned, the actual fuel capacity Plaintiffs and other customers of Mirai receive is far less than the promised capacity. Numerous performance and safety issues with the vehicles themselves have been reported. Plaintiffs have found the actual range of the vehicle on a full tank to be significantly lower than that which is advertised and which they are promised at the time of purchase/lease.

37.    Indeed, in reality, the vehicles only get up to 250 miles per tank. The reason for this is not that the vehicles' efficiency is less than the EPA has estimated, but rather the vehicles' fuel-tanks cannot hold their specified 5.6 kg of hydrogen fuel. Indeed, Plaintiffs and the Class are generally able to pump only 4.0 kg of fuel per tank, resulting in the drastically reduced range per tank. Defendants have known about this problem for years and prior to Plaintiffs' purchase/lease

---

[1] *See* https://pressroom.toyota.com/toyota-introduces-second-generation-mirai-fuel-cell-electric-vehicle-as-design-and-technology-flagship-sedan/ (last accessed April 29, 2025).
*See* https://pressroom.toyota.com/advanced-to-the-core-toyota-mirai-offers-an-electrifying-ride/# (last accessed April 29, 2025).

*PLAINTIFFS' FOURTH AMENDED COMPLAINT*
*[CLASS-ACTION]*

of these vehicles. Yet, that information was not communicated to Plaintiffs and the Class. If Plaintiffs and the Class had known that their vehicles could only be driven up to 250 miles per tank, they would not have purchased or leased these vehicles.

38.    Moreover, Toyota deployed independent contractors to hydrogen fueling stations equipped with laptops and other specialized hardware to extract detailed fueling data. These records provided a detailed history of fueling limitations and station performance issues. These contractors conducted on-site testing using Toyota Mirai vehicles to verify fueling station performance, confirming real-world fueling conditions firsthand. The collected data was then transmitted to Toyota engineers, who analyzed it alongside fuel station operators to assess station functionality and reliability. As a result of this systematic data collection, Toyota had exclusive and continuous access to information regarding incomplete fueling, prolonged station outages, and recurring maintenance closures.

39.    Moreover, Toyota had actual knowledge that the advertised mileage range of the Mirai vehicles was false and misleading. Numerous customers lodged complaints directly with Toyota, reporting that the vehicles routinely failed to achieve the represented mileage per full tank and that fuel outages were a regular and foreseeable occurrence. Despite being aware of these widespread and recurring complaints, Toyota continued to market the vehicles with inflated mileage claims and omitted any disclosure regarding the systemic limitations of the hydrogen fuel infrastructure, thereby knowingly misleading consumers.

40.    Plaintiffs and the Class do not allege that Toyota's EPA mileage estimates are themselves deceptive or inaccurate; rather, the claim is that Toyota misrepresented the real-world range of the vehicles by omitting material facts about a design defect that substantially limits fuel tank capacity and, therefore, range. Toyota's misrepresentations and omissions constitute deceptive business practices, fraudulent concealment, and violations of consumer protection laws, and are not subject to federal preemption, as the basis for the claim is not the EPA estimate itself, but the concealed defect in the fueling system that prevents the vehicles from reaching the advertised range.

41.    Moreover, mechanical and safety issues are rampant, including excessive clunking sounds from the suspension, infotainment screens shutting off during operation, malfunctioning rear-view mirrors, and inconsistent functionality of the Toyota Teammate autopilot feature.

Additionally, plaintiffs have experienced problems such as the vehicle's wireless charger melting and battery failures requiring premature replacement.

42.    Plaintiffs were misled by Defendants' sales representatives regarding the availability and reliability of hydrogen fueling infrastructure and the vehicle's operational range. Additionally, promised incentives, such as fuel cards and complimentary rental days, were either insufficient or mismanaged by Defendants' dealerships.

43.    Furthermore, the vehicle's advertised driving range and the purported benefits of hydrogen fuel cell technology were grossly misrepresented, leading to significant dissatisfaction and financial losses for Plaintiffs. Toyota dealerships have often been unresponsive or dismissive of reported issues, failing to provide satisfactory repairs or explanations. Plaintiffs have had to use up complimentary rental days due to prolonged repairs and dealership errors. Additionally, poor management of hydrogen stations, especially during hot weather, has led to frequent breakdowns and long wait times, significantly impacting Plaintiffs' daily lives and work performance, none of which they were warned about by Defendants at the time of lease or purchase of the Mirai vehicles, despite Defendants and their employees' full knowledge of these issues.

44.    Aside from verbal misrepresentations made by Toyota's salespersons at its dealerships to Plaintiffs and the Class Members, Toyota's advertising campaigns of the Mirai vehicle were highly misleading as well.  Some of the representations made by Toyota include, but are not limited, to the following:

- "Quick refueling: Approx. 5 minutes"[2] (Posted on March 29, 2021 on Toyota Global's YouTube Channel, Facebook page, as well as on Toyota Motor Corporation's Twitter and Instagram pages);

- "After approximately five minutes of refueling Mirai is ready to hit the road"[3] (Posted on March 1, 2024 on Toyota USA's YouTube Channel);

- ". . . instead you simply fill up the tank with hydrogen which can take approximately five minutes"[4] (Posted on January 7, 2021 on Longo Toyota's

---

[2] *See* https://www.youtube.com/watch?v=-tmuiHm5sbc (last accessed April 29, 2025).
[3] *See* https://www.youtube.com/watch?v=fcBw3Ekd3Mo (last accessed April 29, 2025).
[4] *See* https://www.youtube.com/watch?v=2CuWwBulDEc (last accessed April 29, 2025).

YouTube Channel);

- "You might be thinking what's the catch? Well simply put, it fits into your daily routine just like a gasoline car. Except you fill with hydrogen. . ."[5]

- "The Mirai provides excellent everyday driving performance."[6]

- "And as a reminder, each Mirai comes with a complimentary fuel card worth up to $15,000 of hydrogen. That's 3 years for leases or now up to 6 years for purchase."[7]

- "With improvements to hardware and the process of hydrogen refueling, the Toyota Mirai is remarkably easy to refuel."[8] (Posted on June 13, 2022 on Toyota USA's YouTube Channel);

- "Did you know that when you lease a Mirai, you get a $15,000 Fuel Card that you'll be able to use for the entire 3 years of your lease?"[9] (Posted on July 3, 2018 on Tustin Toyota's YouTube Channel);

- "30-Percent Increase in Range up to 402 Miles on XLE Grade"[10] (Pressroom Release dated December 16, 2020);

- "Approx. 5-minute refuel time" and "30-Percent Increase in Range up to 402 Miles on XLE Grade"[11]

- "When fully fueled with hydrogen, the 2024 Mirai XLE has an impressive estimated all-electric driving range of up to 402-miles and the 2024 Mirai Limited has an estimated all-electric driving range of up to 357-miles."[12]

45.    Screenshots taken from Toyota's website further confirm the misrepresentation

---

[5] *Id.* (last accessed April 29, 2025).

[6] *Id.* (last accessed April 29, 2025).

[7] *Id.* (last accessed April 29, 2025).

[8] *See* https://www.youtube.com/watch?v=puYg0MEZWx0 (last accessed April 29, 2025).

[9] *See* https://www.youtube.com/watch?v=KtMGPs7mm9A (last accessed April 29, 2025).

[10] *See* https://pressroom.toyota.com/toyota-introduces-second-generation-mirai-fuel-cell-electric-vehicle-as-design-and-technology-flagship-sedan/ (last accessed April 29, 2025).

[11] *See* https://www.toyotasantamonica.com/toyota-mirai-santa-monica.htm (last accessed April 29, 2025).

[12] *See* https://www.toyota.com/mirai/ (last accessed April 29, 2025).

16

Made by Toyota, some of which are identified above:[13]



**Mirai Specs & Benefits**

See All Specs

| COMPLIMENTARY FUEL | HYBRID BATTERY WARRANTY | CARPOOL ACCESS |
|---|---|---|
| Purchase – $15,000 or 6 years, * whichever comes first Lease – $15,000 or 3 years, * whichever comes first | 10-year/150,000 mile warranty | Eligible for HOV carpool sticker (where applicable) * |

| EST. RANGE | FCEV WARRANTY | EXTENDED TOYOTACARE COVERAGE |
|---|---|---|
| Up to 402 Miles Est. Driving Range * | 8-year/100,000-mile warranty on key Fuel Cell Electric Vehicle (FCEV) components * | 3 years or 35,000 miles * |

**Up to 402 Mile Combined Estimated Driving Range**

When fully fueled with hydrogen, the 2024 Mirai XLE has an impressive estimated all-electric driving range of up to 402-miles * and the 2024 Mirai Limited has an estimated all-electric driving range of up to 357-miles. *

**View Specs**

Standard ✓
Available ○
Not Available —

— Collapse All



**XLE**
Toyota Fuel Cell System (TFCS) Rear-Wheel Drive
Build

**Limited**
Toyota Fuel Cell System (TFCS) Rear-Wheel Drive
Build

**MPG/Other/Price**

**Mileage Estimates**

| Mileage estimates (MPGe city/highway/combined) * | 76/71/74 | 67/64/65 |
|---|---|---|

**Range**

| Range (miles) * | 402 | 357 |
|---|---|---|

---

[13] *Id.* (last accessed April 29, 2025).

*PLAINTIFFS' FOURTH AMENDED COMPLAINT
[CLASS-ACTION]*

46.     This information provided on Toyota's website as well as provided through its various dealerships are highly misleading in that they mislead customers to believe that the Mirai XLE vehicle will actually deliver a 402 miles range, while a Mirai Limited vehicle will deliver a 357 miles range, when in reality, the vehicles only get up to 250 miles per tank because the vehicles' fuel-tanks cannot hold the specified 5.6 kg of hydrogen fuel, a problem that Toyota has known about but never communicated to Plaintiffs and the Class.

47.     However, some of these advertisements include a small asterisk that only if one clicks on will provide the standard boilerplate language, in tiny font, that these are "EPA-estimated" and that "your mileage will vary for many reasons." Below is a screenshot showcasing the message that pops up only if a customer clicks on the tiny asterisk:

* EPA-estimated 402 total driving range rating for 2024 Mirai XLE and 357 total driving range rating for 2024 Mirai Limited. Use for comparison purposes only. Your mileage will vary for many reasons, including refueling practices, your vehicle's condition and how/where you drive. See www.fueleconomy.gov. 

48.     This language, however, did not alter Toyota's overall impression on consumers, in part because nowhere in the advertisements, on its website and/or in its News Releases did it make a distinction between real-world performance and the EPA-estimated rating.

49.     Not only has Toyota claimed through marketing, advertisements, and News Releases that Mirai XLE has up to a 402-mile fuel capacity per tank, while a Mirai Limited has a 357-mile fuel capacity per tank, but it has also emphasized that these numbers are actually achievable by the Mirai vehicles meaning that the Toyota Mirai vehicles' fuel capacity reaches these numbers. These representations by Toyota regarding its Mirai vehicles is designed to convey real vehicle performance and claims to actually reflect the reality of its Mirai vehicles.

50.     Indeed, in reality, the vehicles only get up to 250 miles per tank. The reason for this is not that the vehicles' efficiency is less than the EPA has estimated, but rather the vehicles' fuel-tanks cannot hold their specified 5.6 kg of hydrogen fuel. Indeed, Plaintiffs and the Class are generally able to pump only 4.0 kg of fuel per tank, resulting in the drastically reduced range per tank. Defendants have known about this problem for years and prior to Plaintiffs' purchase/lease of these vehicles. Yet, that information was not communicated to Plaintiffs and the Class. If Plaintiffs and the Class had known that their vehicles could only be driven up to 250 miles per tank, they would not have purchased or leased these vehicles.

51.     Plaintiffs and the Class do not allege that Toyota's EPA mileage estimates are themselves deceptive or inaccurate; rather, the claim is that Toyota misrepresented the real-world

range of the vehicles by omitting material facts about a design defect that substantially limits fuel tank capacity and, therefore, range. Toyota's misrepresentations and omissions constitute deceptive business practices, fraudulent concealment, and violations of consumer protection laws, and are not subject to federal preemption, as the basis for the claim is not the EPA estimate itself, but the concealed defect in the fueling system that prevents the vehicles from reaching the advertised range.

52.    However, under real-world conditions, consumers such as Plaintiffs were consistently unable to get anywhere near the advertised 402-mile fuel capacity for the Mirai XLE and 357-mile fuel capacity for the Mirai Limited. Indeed, in reality, the vehicles only get up to 250 miles per tank. The reason for this is not that the vehicles' efficiency is less than the EPA has estimated, but rather the vehicles' fuel-tanks cannot hold their specified 5.6 kg of hydrogen fuel. Indeed, Plaintiffs and the Class are generally able to pump only 4.0 kg of fuel per tank, resulting in the drastically reduced range per tank. Defendants have known about this problem for years and prior to Plaintiffs' purchase/lease of these vehicles. Yet, that information was not communicated to Plaintiffs and the Class. If Plaintiffs and the Class had known that their vehicles could only be driven up to 250 miles per tank, they would not have purchased or leased these vehicles.

53.    Indeed, nowhere in its advertising campaigns did Toyota make a distinction between real-world performance and the EPA-estimated numbers provided. Furthermore, at no point during the sale/lease of the Mirai vehicle(s) purchased by each of the Plaintiffs did Toyota or its authorized sales representatives explicitly inform Plaintiffs that the advertised fuel capacities were merely estimates based on laboratory or controlled conditions and not reflective of actual performance in real-world driving scenarios.

54.    Instead, Toyota's sales representatives repeatedly assured Plaintiffs that the Mirai vehicles would achieve the advertised mileage under normal driving conditions without qualifying these statements as based on EPA estimates or theoretical projections.

55.    Plaintiffs and Class Members, reasonably relied on these assurances, which were further reinforced by Toyota's consistent marketing materials that omitted any disclaimers about variability in real-world performance.

56.    Toyota's sales representatives emphasized the Mirai's advertised fuel capacities as a significant selling point to each and every Plaintiff, framing them as definitive features of the

---

19

vehicles, and did not disclose any factors that could cause substantial deviations from the stated numbers.

57.    Toyota's advertisements, marketing campaigns, and statements from its sales representatives created a uniform, misleading message that the Mirai vehicles could achieve the advertised fuel capacities without exception or limitation.

58.    Even when some of the Plaintiffs and Class Members raised concerns or inquired about their Mirai vehicle's inability to meet the advertised ranges, Toyota and its employees failed to provide a satisfactory explanation or acknowledge that the advertised fuel capacities were estimates, instead deflecting responsibility or attributing the discrepancies to user error. Plaintiffs and Class Members purchased the Mirai vehicles at a premium, specifically due partly to the reliance on the advertised fuel capacities, which Toyota and its sales representatives knew or should have known were not achievable under typical conditions.

59.    In summary, Plaintiffs have faced and continue to face a pattern of misrepresentations, poor infrastructure support, significant financial burdens, and inadequate customer service, forming the basis for this lawsuit.

60.    All of the representations and omissions above induced Plaintiffs and other consumers to purchase or lease the Mirai. However, these promises have proven insufficient to provide the benefit-of-the-bargain, which is the ownership or lease of an operational passenger vehicle. Indeed, given the various issues with the Mirai vehicle, as well as Mirai's high operating costs, as stated in detail above, the re-sale value of Mirai vehicles have decreased exponentially. In fact, the Toyota Mirai's value retention after five years is only 19.4 percent.[14]

61.    Toyota has significantly misled Plaintiffs regarding the resale value and financial sustainability of their vehicles. For example, one plaintiff who still owes approximately $13,000 for his vehicle has been told that the resale value is now only around $4,100. Another plaintiff reports a similar financial discrepancy, with the resale value being merely $4,100 while he owes about $14,000 to Defendants. These financial disparities underscore a severe devaluation of the vehicles that was neither anticipated nor adequately communicated at the time of purchase. Moreover, and just recently, Toyota has reduced the price of its 2024 Mirai in California to just

---

[14] *See* https://www.motortrend.com/features/worst-resale-value-cars/ (last accessed April 29, 2025).

*PLAINTIFFS' FOURTH AMENDED COMPLAINT*
*[CLASS-ACTION]*

over $15,000, which includes a $15,000 hydrogen fuel card.[15] This sharp price drop from around $58,000 illustrates how the Toyota Mirai is facing challenges related to the very issues raised by Plaintiffs, such as unreliable fueling infrastructure and unpredictable fuel costs. This situation reinforces the claims of deceptive marketing and unmet promises made to Plaintiffs at the time they purchased or leased their Mirai vehicles, regarding the practicality and affordability of the vehicle.

62.    Moreover, many Toyota Mirai owners find themselves in a frustrating and untenable situation due to the severe lack of hydrogen fuel availability and the exorbitantly high prices of the limited fuel that is available. This issue has rendered their vehicles essentially unusable. Despite this, these owners, who have either leased or financed their Mirai, are obligated to continue making monthly payments for a car that sits idle. The alternative—defaulting on these payments—would severely damage their credit score, leaving them with no choice but to continue paying for a vehicle that they cannot drive. As such, these consumers, including Plaintiffs, are trapped in an unfair cycle, forced to pay for a vehicle they cannot drive, incurring financial strain through no fault of their own. This situation is not just inconvenient; it is an unjust imposition on the financial stability and well-being of Toyota Mirai owners.

63.    Indeed, Toyota is fully aware of the significant and ongoing reliability issues with the Toyota Mirai, including but not limited to the difficulty of finding hydrogen fuel. However, rather than addressing the core issue of fuel availability or providing an adequate solution to customers, Toyota's response has been to provide extended rental vehicles, sometimes for months at a time, clearly showcasing that it is aware of the profound inconvenience the Mirai vehicle is causing, yet failing to take any meaningful action.

64.    By offering rental vehicles as a workaround, Toyota admits that their hydrogen-powered vehicle is unreliable and problematic. This pattern of providing temporary fixes rather than addressing the root cause—including the vehicle's performance issues and the lack of fueling infrastructure—clearly evidences that Toyota is aware of the problems which exist concerning its Mirai vehicle but continues to push the Mirai onto customers despite these glaring deficiencies. The extended rental offers further indicate that Toyota has not implemented sufficient long-term

---

[15] *See* https://www.hydrogeninsight.com/transport/toyota-reduces-price-of-new-hydrogen-car-in-california-to-just-over-15-000-with-15-000-of-free-fuel/2-1-1769729 (last accessed April 29, 2025).

solutions or communicated any realistic timeline for resolving the various issues with the Mirai vehicles.

65.    Indeed, as a result of Defendants' unlawful conduct, concealment of facts and misrepresentation of various matters, Plaintiffs and Class members have incurred and continue to incur significant damages.

**PLAINTIFFS**

66.    Plaintiff BRYAN CALUWE is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the State of California. Plaintiff CALUWE purchased a brand new 2022 Toyota Mirai XLE in 2022 from Hamer Toyota. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. As part of the purchase, Toyota provided a $15,000 hydrogen fuel card, which was expected to cover fuel costs for at least six years. However, since Plaintiff's purchase, the price of hydrogen has increased by approximately 200%, now reaching over $32 per kilogram. Despite this drastic price hike, Toyota has not adjusted the value of the fuel-card accordingly, rendering the original economic benefits of the vehicle meaningless. Due to the rising cost of hydrogen, Plaintiff can no longer afford to use the Mirai as planned, including taking trips to the San Francisco Bay Area and Sacramento. Furthermore, owning his Mirai is now a total inconvenience as hydrogen stations are either down for mechanical reasons, or they are out of fuel. As a result, he has been forced to significantly limit his use of the Mirai, undermining the core reason for purchasing the vehicle. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff CALUWE visited Hamer Toyota in Mission Hills, California on or about May 2022 to inquire about purchasing a 2022 Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations

22

including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff CALUWE proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

67.    Plaintiff SHERVIN SHAHHIAN is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff SHAHHIAN took over the lease of a 2021 Toyota Mirai XLE in 2021. Plaintiff leased the Toyota Mirai based on Toyota's advertisements and representations, including statements about its driving range of 402-miles per tank which he saw in early 2021 on Toyota's website. The closest station available to Plaintiff Shahhian frequently would run out of hydrogen or is closed, forcing Plaintiff to travel between multiple locations in Los Angeles County in search of fuel. On multiple occasions, he was unable to refuel due to station closures or fuel shortages, rendering the vehicle inoperable. As a direct result of these fueling limitations, Plaintiff's vehicle has been towed multiple times due to running out of hydrogen with no available refueling options. Additionally, the fueling process itself is unreliable; among other things, the hydrogen pump would sometimes freeze at extremely low temperatures and become stuck to his vehicle, once leaving Plaintiff waiting for 30 minutes before it disengaged. The fuel gauge was also erratic—and Plaintiff observed instances where the vehicle displayed a remaining range of 30-40 miles, yet after driving only a few miles, the range suddenly dropped to under 10 miles, creating an unpredictable and unsafe driving experience. Furthermore, at the time he leased the vehicle, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

68.     Plaintiff LEILA KHAJE HOSEINI is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff KHAJE HOSEINI purchased a Certified Pre-Owned 2017 Toyota Mirai XLE in 2021 from Hamer Toyota. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Plaintiff financed her vehicle, relying on Toyota's representations about hydrogen availability and ongoing fuel incentives. However, due to the extreme scarcity of operational hydrogen fuel stations, Plaintiff frequently finds herself unable to refuel the vehicle. Although the car's navigation system indicates that hydrogen is available at certain stations, she often arrives to find the stations out of service or completely nonfunctional. Indeed, in a period of three months alone, Plaintiff's vehicle was towed four times after running out of hydrogen with no access to refueling.  Additionally, servicing the vehicle has proven to be a major challenge, as only four Toyota dealerships in Los Angeles are equipped to service the Mirai. The lack of hydrogen infrastructure and declining support for the vehicle have caused its value to plummet—despite purchasing the car for over $25,000, Plaintiff was recently offered only $2,500 by CarMax for her Mirai. These are just a few examples of Plaintiff's experiences with her Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff KHAJE HOSEINI visited Hamer Toyota in Mission Hills, California on or about 2021 to inquire about purchasing a Toyota Mirai, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of over 300-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff KHAJE HOSEINI proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of

the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

69.    Plaintiff SOHEIL VAHEDI is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff VAHEDI purchased a brand new 2022 Toyota Mirai XLE in 2022 from Toyota of Santa Monica. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Plaintiff also purchased his Toyota Mirai based on financial incentives, and based on assurances made to him by Defendants' sales representatives that hydrogen fuel cell vehicles were the future, and that they were superior to gas-powered cars. However, despite owning the vehicle for over two years, Plaintiff has driven it only 5,000 miles due to the severe unreliability of hydrogen refueling. The station closest to him, located in Santa Monica, California, has been nonfunctional for two years, leaving him without a dependable fuel source. While Toyota advertised that the Mirai could travel up to 320 miles on a full tank, in reality, he has never been able to exceed 220-240 miles, and the tank does not fill up to the promised capacity. Plaintiff has repeatedly experienced malfunctioning hydrogen pumps, including instances where the pump gets stuck to the vehicle, requiring him to wait up to 30 minutes before it disengages. These issues have made him and his mother, who also uses the vehicle, fearful of driving the car, as they cannot trust that a station will be open when they need to re-fuel. Despite making numerous complaints to Toyota about these issues, Toyota has failed to address the underlying problems with the vehicle and has at times merely provided Plaintiff with a rental vehicle. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff VAHEDI visited Toyota of Santa Monica in Santa Monica, California on or about 2022 to inquire about purchasing a 2022 Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their

salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff VAHEDI proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

70.    Plaintiff IRVING ADLEN is, and at all times relevant here, has been a resident of Santa Monica, California, and, thus, a citizen of the state of California. Plaintiff ADLEN leased a brand new 2020 Toyota Mirai in 2020 from Longo Toyota. Plaintiff leased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of lease. Plaintiff leased the Toyota Mirai with the understanding that he could regularly use his vehicle. However, he quickly found that stations are unreliable, frequently offline, or entirely shut down. Stations marked as "available" on his vehicle's application often turn out to be inoperable upon arrival, forcing him to search for fuel across the city. Because of the unreliable fueling network, Plaintiff is unable to use the Mirai for commuting or long-distance travel. The limited functional stations require extensive detours and long wait times, making the car impractical. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff ADLEN visited Longo Toyota in El Monte, California on or about 2020 to inquire about leasing a 2020 Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the

representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff ADLEN proceeded with the lease of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have leased the Mirai or would have paid less for it.

71.     Plaintiff RYAN KISKIS is, and at all times relevant here, has been a resident of Pacific Palisades, California, and, thus, a citizen of the state of California. Plaintiff KISKIS purchased a brand new 2022 Toyota Mirai XLE in 2022 from Hamer Toyota. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. However, he soon discovered that refueling stations are not only scarce but also highly unreliable. While Toyota pointed him to three stations that were supposed to serve his commute between his residence in Pacific Palisades and his workplace in Marina del Rey, in practice, refueling has been extremely difficult as the three stations have either completely shut down or are offline more often than they are online, and when one is operational, it has significant wait times. On multiple occasions, Plaintiff has arrived at stations that appeared online, only to have them fail while he attempted to refuel—once due to a fuel shortage and once due to a point-of-sale system failure. Because of these persistent issues, Plaintiff has been forced to rely on the only two somewhat functional stations which are each 45 minutes to 1.5 hours away from his residence depending on traffic, making the Mirai essentially unusable for commuting. As a result of these widespread infrastructure failures, he has learned that the estimated resale value of the Mirai has plummeted from $25,000–$35,000 when Plaintiff purchased it to under $10,000 at best. Indeed, in nearly two years of ownership, he has only been able to drive the vehicle 6,000 miles. In fact, what was pitched to Plaintiff as a viable alternative to gasoline-powered vehicles has turned into an expensive, unusable driveway decoration. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff KISKIS visited Hamer Toyota in Mission Hills, California in or about October 2022 to inquire about purchasing a 2022 Toyota Mirai XLE, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank,

and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff KISKIS proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

72.    Plaintiff ALVIN MENDOZA is, and at all times relevant here, has been a resident of Hemet, California, and, thus, a citizen of the state of California. Plaintiff MENDOZA purchased a brand new 2022 Toyota Mirai XLE in 2023 from Tustin Toyota. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Plaintiff has experienced the same issues others have reported with the Toyota Mirai, including the nozzle freezing to the car, no hydrogen fuel available at the pump, and pumps going out of order for weeks at a time. He was promised an expanding hydrogen infrastructure, but after more than two years, the situation has only worsened, with stations closing down due to operational issues. Despite being provided a $15,000 fuel card and being promised by Toyota and its sales representatives that it would last him many years, the fuel card only lasted about one year—far less than the promised four to five years. As a result of these ongoing problems, Plaintiff is unable to drive his car as promised. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff MENDOZA visited Tustin Toyota in Tustin, California in or about January 2023 to inquire about purchasing a 2022 Toyota Mirai XLE, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no

representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff MENDOZA proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

73.     Plaintiff KOUROSH ELIAHOZADEH is, and at all times relevant here, has been a resident of Beverly Hills, California, and, thus, a citizen of the state of California. Plaintiff ELIAHOZADEH purchased a Certified Pre-Owned 2019 Toyota Mirai XLE in May 2022 from Tustin Toyota. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, but in reality, the vehicle does not exceed 180 miles on a full tank. Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use. The cost of hydrogen has more than doubled since his purchase, making it prohibitively expensive to operate and amounting to nearly $1 per mile. Moreover, the lack of hydrogen infrastructure severely limits where Plaintiff can travel, creating safety risks, as he often has to drive far from home just to refuel, with the constant threat of running out of fuel and being stranded. Despite these issues, Plaintiff still owes thousands of dollars on the vehicle loan, leaving him trapped in an unreliable and costly situation. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff ELIAHOZADEH visited Tustin Toyota in Tustin, California in or about May 2022 to inquire about purchasing a 2019 Toyota Mirai XLE, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank,

29

and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff ELIAHOZADEH proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

74.    Plaintiff ADNAN AGBOATWALLA is, and at all times relevant here, has been a resident of San Jose, California, and, thus, a citizen of the state of California. Plaintiff AGBOATWALLA purchased a brand new 2022 XLE Toyota Mirai in 2022 from Toyota of San Francisco. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Moreover, Plaintiff purchased the Toyota Mirai based on the expectation that hydrogen fuel would remain affordable and available. At the time of his purchase, hydrogen was priced at approximately $12 per kilogram, and Plaintiff was told by Toyota's sales representatives that the $15,000 fuel card would last him several years. However, the price has since tripled to $36 per kilogram, depleting the fuel card much faster than anticipated. In addition to the skyrocketing fuel costs, the hydrogen fueling infrastructure has proven unreliable. The car's system and Toyota's app frequently show stations as operational when, in reality, the pumps are not working, forcing Plaintiff to search for another station just to refuel. On one occasion, every station in the Bay Area was nonfunctional for 3–4 days, rendering the vehicle completely unusable. Plaintiff has also experienced the common issue of the fuel nozzle freezing to the car, requiring him to wait approximately half an hour just to detach it. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff AGBOATWALLA visited Toyota of San Francisco in Francisco, California in or about April 2022 to inquire about purchasing a 2022 Toyota Mirai XLE, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff AGBOATWALLA proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

75.    Plaintiff SAMIN EFTEKHARI is, and at all times relevant here, has been a resident of Lake Forest, California, and, thus, a citizen of the state of California. Plaintiff EFTEKHARI purchased a brand new 2021 Limited Toyota Mirai in 2021 from Toyota of Orange. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Plaintiff initially relied on the $15,000 fuel card provided by Toyota, but once it was depleted, the cost of hydrogen became unsustainable—amounting to nearly $1 per mile. Due to the lack of available hydrogen fuel, the inability to reliably refuel the vehicle, and the high cost of hydrogen, none of which he had been warned about prior to his purchase of his Mirai vehicle, Plaintiff had no choice but to sell the car. Furthermore, the vehicle's severe depreciation left Plaintiff with $17,000 in negative equity when trading it in 2023. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff EFTEKHARI visited Toyota of Orange in Orange, California on or about 2021 to inquire about purchasing a 2021 Toyota Mirai Limited, one or more Toyota

salesperson specifically informed him that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff EFTEKHARI proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

76.    Plaintiff JOSEPH KIM is, and at all times relevant here, has been a resident of Ontario, California, and, thus, a citizen of the state of California. Plaintiff KIM purchased a Certified Pre-Owned 2016 Toyota Mirai in 2020 from Longo Toyota. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Plaintiff was misled to believe that fueling the vehicle would be reliable, but in reality, the fueling experience has been extremely problematic. Hydrogen stations are frequently unavailable, making it difficult to refuel. Additionally, the advertised driving range was significantly overstated, as Plaintiff was never able to achieve the mileage promised at the time of purchase. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff KIM visited Longo Toyota in El Monte, California on or about 2020 to inquire about purchasing a 2016 Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and

therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff KIM proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

77.    Plaintiff HIWOT MENGISTU is, and at all times relevant here, has been a resident of Placentia, California, and, thus, a citizen of the state of California. Plaintiff MENGISTU purchased a Certified Pre-Owned 2019 Toyota Mirai in April 2024 from Toyota of Orange. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Plaintiff was not informed by Toyota or its employees about critical issues with the Mirai, including hydrogen fuel shortages, unreliable refueling stations, frozen fuel pumps causing significant delays, and the sharp increase in hydrogen fuel prices. These undisclosed problems have made it impractical for Plaintiff to drive his vehicle as intended. These are just some of Plaintiff's experiences, and all allegations in the complaint apply to Plaintiff as well. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff MENGISTU visited Toyota of Orange in Orange, California in or about March 2024 to inquire about purchasing a 2019 Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations

33

including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff MENGISTU proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

78.    Plaintiff IRINA MELIKSETYAN is, and at all times relevant here, has been a resident of Chatsworth, California, and, thus, a citizen of the state of California. Plaintiff MELIKSETYAN purchased a brand new 2021 Limited Toyota Mirai in 2021 from Toyota Sunnyvale. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Given the problems with the lack of hydrogen availability and the drastic price increase of hydrogen, after less than two years of ownership, Plaintiff was forced to park the Mirai and lease a gasoline-powered vehicle due to unreliable refueling options. The station closest to Plaintiff was out of service for over six months, and other stations were frequently offline or required multiple attempts to refuel. Moreover, limited operational pumps resulted in long lines and delays. These are just a few examples of Plaintiff's experiences with her Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff MELIKSETYAN visited Toyota Sunnyvale in Sunnyvale, California in or about November 2021 to inquire about purchasing a 2021 Limited Toyota Mirai, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff MELIKSETYAN proceeded with the purchase of her vehicle, believing that the Mirai

would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

79.    Plaintiff ANGELA ROSE NUNO is, and at all times relevant here, has been a resident of Sacramento, California, and, thus, a citizen of the state of California. Plaintiff NUNO purchased a Certified Pre-Owned 2017 Toyota Mirai in 2021 from Roseville Toyota. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. At the time of purchase, Toyota and its sale-persons assured Plaintiff that hydrogen availability would continue to grow, that prices would remain low, and that refueling would be as convenient as gasoline. Moreover, Plaintiff was promised a range of over 300 miles but never achieved more than approximately 260 miles per tank. Shortly after purchase, Plaintiff discovered that hydrogen pumps were frequently inoperable due to fuel shortages, pump freezes, and technical issues. Over time, stations reduced the number of operational pumps, and two stations near her residence shut down completely. The only remaining station in West Sacramento imposes a mandatory 15-minute wait between fill-ups, making it nearly impossible to refuel efficiently. As a result, Plaintiff lost work and clients due to the unreliability of the Mirai. Indeed, on one occasion, Plaintiff waited 14 hours in line for fuel, only for the pump to go down with four cars ahead. Furthermore, despite driving in eco mode on surface streets, Plaintiff's effective range per refueling was only 110-120 miles—far below Toyota's advertised range. These issues, among others, has made her Mirai impractical and unreliable for daily use. These are just a few examples of Plaintiff's experiences with her Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff NUNO visited Roseville Toyota in Roseville, California on or about 2021 to inquire about purchasing a 2017 Toyota Mirai, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost

35

of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff NUNO proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

80.    Plaintiff JUAN CARRANZA DELGADO is, and at all times relevant here, has been a resident of Orange, California, and, thus, a citizen of the state of California. Plaintiff DELGADO purchased a brand new 2022 Limited Toyota Mirai in 2022 from Toyota of Orange. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase.  The skyrocketing price of hydrogen and the frequent station outages have made refueling increasingly difficult. Plaintiff wasted fuel driving from station to station in an attempt to refuel, further exacerbating the vehicle's impracticality. These failures have made his ownership of the Toyota Mirai unreliable, costly, and unsafe. Furthermore, Plaintiff's vehicle has never achieved the advertised mileage. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff DELGADO visited Toyota of Orange in Orange, California in or about July 2022 to inquire about purchasing a 2022 Limited Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues,

Plaintiff DELGADO proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

81.    Plaintiff DAWAR NAQVI is, and at all times relevant here, has been a resident of Yorba Linda, California, and, thus, a citizen of the state of California. Plaintiff NAQVI purchased a brand new 2022 Toyota Mirai XLE in 2022 from Tustin Toyota. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Plaintiff purchased the Toyota Mirai when hydrogen fuel was priced at $12 per kilogram and received a $15,000 fuel card, which he was told by Toyota that it would last him at least five years. However, within months of purchase, the price increased to $16 and then to $36 per kilogram, completely disrupting Plaintiff's financial planning which was one of the main reasons why he had been convicted by Toyota's sales-persons to purchase his Mirai. Defendants' salesperson, by the name of "Cody", misrepresented the reliability of hydrogen fueling infrastructure, falsely claiming that modern stations near Plaintiff's home in Placentia and Orange would remain operational without shortages or closures. In reality, Plaintiff has repeatedly faced long lines, station outages, and fuel shortages. As a result, Plaintiff has often been forced to drive 20 miles away to Irvine or Costa Mesa just to refuel. These fueling issues have caused Plaintiff to take time off work, arrive late, and have negatively impacted his job performance. Toyota's misleading sales tactics included false assurances that additional hydrogen stations would be built and that fuel prices would decrease. Instead, the infrastructure has worsened, making the vehicle unreliable for daily use. Due to these issues, Plaintiff now relies on other vehicles for commuting and only uses the Mirai for short city trips. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff NAQVI visited Toyota of Orange in Orange, California in or about June 2022 to inquire about purchasing a 2022 Toyota Mirai XLE, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle

---

37

is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff NAQVI proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

82.     Plaintiff DIEGO TOSCANO is, and at all times relevant here, has been a resident of Livermore, California, and, thus, a citizen of the state of California. Plaintiff TOSCANO purchased a brand new 2022 Limited Toyota Mirai in 2022 from Dublin Toyota. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Plaintiff has experienced significant issues with hydrogen fueling at the station nearest to his residence, which has been consistently unreliable since his purchase of the Toyota Mirai. Despite assurances from the dealership, the station frequently fails to provide fuel. As a result, Plaintiff has been forced to drive up to 60 miles from his home just to refuel. These issues have significantly impacted Plaintiff's ability to rely on the vehicle and have caused frustration, as the dealership's claims about the vehicle's reliability and hydrogen availability were misleading. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff TOSCANO visited Dublin Toyota in Dublin, California in or about June 2022 to inquire about purchasing a 2022 Limited Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost

of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff TOSCANO proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

83.    Plaintiff MOHSEN HASS is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff HASS purchased a Certified Pre-Owned 2018 Toyota Mirai in 2021 from Toyota of Orange. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Plaintiff has faced consistent issues with finding working fueling stations, as many stations have non-operational pumps. Furthermore, the price of hydrogen fuel has increased three times since his purchase, making the car increasingly unaffordable to operate. Despite Toyota's promise of a reliable, cost-effective car, these ongoing problems have left him dissatisfied with his purchase as he is unable to operate his vehicle at his will. Plaintiff finances the vehicle and has an outstanding balance of approximately $13,000 for a vehicle that he cannot use as intended. Furthermore, the current resale value of the vehicle is only a few thousand dollars, a significant depreciation that has caused financial strain on Plaintiff. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff HASS visited Toyota of Orange in Orange, California in or about December 2021 to inquire about purchasing a 2018 Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost

of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff HASS proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

84.    Plaintiff MARLA R. DREYFUS is, and at all times relevant here, has been a resident of Valencia, California, and thus a citizen of the State of California. Plaintiff DREYFUS purchased a Certified Pre-Owned 2018 Toyota Mirai in 2022 from Hamer Toyota. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Plaintiff purchased the Toyota Mirai with the expectation of a 312-mile range, which is what she was told by Toyota and its sales-persons, but has only been able to achieve approximately 210 miles per full tank. Additionally, Plaintiff has consistently encountered issues with fueling, as hydrogen stations are frequently closed when needed. Moreover, despite purchasing the vehicle when hydrogen prices were $12 per kilogram, the price has since risen to $36, making the car significantly more expensive to operate. Moreover, Plaintiff has suffered a considerable financial loss due to the vehicle's resale value, which has dropped by around $10,000, contributing to the financial strain caused on her. These are just a few examples of Plaintiff's experiences with her Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff DREYFUS visited Hamer Toyota in Mission Hills, California on or about 2022 to inquire about purchasing a 2018 Toyota Mirai, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost

of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff DREYFUS proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

85.    Plaintiff TRILOK DESAI is currently a resident of Bloomfield Hills, Michigan, but was previously a resident of Santa Cruz, California when he purchased a brand new 2023 Toyota Mirai XLE in 2024 from Sunnyvale Toyota. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Plaintiff has encountered several issues with his Toyota Mirai, primarily due to a lack of hydrogen fueling stations in California and across the United States. Additionally, the price of hydrogen per kilogram has significantly increased, further exacerbating the cost of operation. Furthermore, Plaintiff was misled by Toyota due to false promises made at the time of purchase, including assurances about fueling station availability and infrastructure expansion. He is also dissatisfied with the car's resale value, as it has depreciated significantly, further contributing to financial loss. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff DESAI visited Sunnyvale Toyota in Sunnyvale, California in or about March 2024 to inquire about purchasing a 2023 Toyota Mirai XLE, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations

41

including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff DESAI proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

86.    Plaintiff RAY CHAKMAKCHI is, and at all times relevant here, has been a resident of Irvine, California, and thus a citizen of the State of California. Plaintiff CHAKMAKCHI purchased a brand new 2023 Toyota Mirai XLE in 2023 from Tustin Toyota, as well as a certified pre-owned 2019 Toyota Mirai in 2023. Plaintiff purchased the Toyota Mirai vehicles based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Plaintiff has consistently had issues with hydrogen fuel availability, unreliable fueling stations, and excessive delays or closures at the stations. Additionally, the fuel card provided by Toyota has failed to meet his expectations, leaving Plaintiff with higher out-of-pocket fuel costs, especially with the rising price of hydrogen. Furthermore, the trade-in value of his vehicles has depreciated significantly, further exacerbating the financial burden caused by his vehicles' performance and lack of accessible fueling infrastructure. These are just a few examples of Plaintiff's experiences with his Toyota Mirais and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff CHAKMAKCHI visited Tustin Toyota in Tustin, California on or about 2023 to inquire about purchasing a 2023 Toyota Mirai XLE and a certified pre-owned 2019 Toyota Mirai, one or more Toyota salesperson specifically informed him that 2023 Mirai had a driving range of 402-miles per tank, while the 2019 Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations

---

42

including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff CHAKMAKCHI proceeded with the purchase of his vehicles, believing that the Mirai vehicles would meet his driving needs. Had he known that the actual driving range on the two vehicles was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai vehicles or would have paid less for them.

87.    Plaintiff SHUK L. CHAN is, and at all times relevant here, has been a resident of Chino, California, and thus a citizen of the State of California. Plaintiff CHAN purchased a brand new 2021 Limited Toyota Mirai in 2021 from Tustin Toyota. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Plaintiff has had significant issues with fueling stations, often finding them offline despite appearing operational when checking the status on his vehicle. This has resulted in wasted time and fuel as he was forced to drive back and forth to find a functioning station. When purchasing his vehicle, Plaintiff was told by Toyota and its sales-persons that the $15,000 fuel card would last him more than five years, and he relied on those representations in deciding to purchase his Mirai. However, the price has nearly tripled, and the promised infrastructure expansion has not materialized. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff CHAN visited Tustin Toyota in Tustin, California in or about September 2021 to inquire about purchasing a 2021 Limited Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues,

Plaintiff CHAN proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

88.    Plaintiff TIMOTHY J. SHEENA is, and at all times relevant here, has been a resident of Thousand Oaks, California, and thus a citizen of the State of California. Plaintiff SHEENA purchased a Certified Pre-Owned 2018 Toyota Mirai in 2022 from Sunnyvale Toyota. Since his purchase, there has been a significant decrease in the number of operational hydrogen stations, and the functionality of the pumps at available stations, causing frequent disruptions in refueling. Additionally, hydrogen fuel prices have dramatically increased, undermining the financial benefits that were promised by Toyota when he purchased the vehicle. Moreover, the vehicle's actual driving range varies with each refuel, failing to meet the advertised expectations. Furthermore, the market value of the vehicle has dropped substantially in the past year, causing financial hardship on Plaintiff. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff SHEENA visited Sunnyvale Toyota in Sunnyvale, California in or about April 2022 to inquire about purchasing a 2018 Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff SHEENA proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state

44

of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

89.    Plaintiff KEN SOLOMON is, and at all times relevant here, has been a resident of Topanga, California, and thus a citizen of the State of California. Plaintiff SOLOMON purchased a Certified Pre-Owned 2016 Toyota Mirai in 2022 from Long Toyota.  Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Since purchasing the vehicle, Plaintiff has faced persistent challenges in securing hydrogen fuel. Despite the proximity of a station less than three miles away from his residence, which is one of the reasons he purchased his vehicle, he often has to travel over 40 to 50 miles to obtain fuel, which is frequently unavailable or overpriced. Initially, hydrogen fuel was priced at $14 per kg, but now it costs $36 per kg, forcing Plaintiff to significantly limit his use of his vehicle. Additionally, the vehicle, originally purchased for $65,000, has suffered severe depreciation, leaving its trade-in value between $3,000 and $4,000, while Plaintiff still owes over $10,000 on it. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff SOLOMON visited Long Toyota in El Monte, California in or about August 2022 to inquire about purchasing a 2016 Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff SOLOMON proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state

of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

90.    Plaintiff PETER SNELL is, and at all times relevant here, has been a resident of Topanga, California, and thus a citizen of the State of California. Plaintiff SNELL purchased a Certified Pre-Owned 2018 Toyota Mirai in 2021 from Hamer Toyota.  Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. Hydrogen stations near his home are frequently unavailable due to the lack of hydrogen, due to repairs or are shut down completely, forcing him to drive 30 miles round-trip to an alternative station. This results in additional fuel costs just to go and fill up his vehicle. Plaintiff's $15,000 fuel card, which he was told by Toyota and its sales-persons that it would last him at least 45,000 miles, only lasted him approximately 30,000 miles. Moreover, the price of hydrogen fuel has risen sharply from approximately $13.99 per kg to $36 per kg, further diminishing the vehicle's value and practicality, something that he was not told as being a possibility by Toyota or its sales-persons at the time of his purchase. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff SNELL visited Hammer Toyota in Mission Hills, California on or about 2021 to inquire about purchasing a 2018 Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff SNELL proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of

hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

91.    Plaintiff ANDREW VIEYRA is, and at all times relevant here, has been a resident of Huntington Beach, California, and, thus, a citizen of the state of California. Plaintiff VIEYRA purchased a brand new 2022 Toyota Mirai XLE from Toyota of Orange. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff VIEYRA visited Toyota of Orange in Orange, California in or about 2022 to inquire about purchasing a 2022 Toyota Mirai XLE, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

92.    Plaintiff DORIAN DARIUS FARROKHI is, and at all times relevant here, has been a resident of Woodland Hills, California and, thus, a citizen of the state of California. Plaintiff FARROKHI purchased a 2022 Toyota Mirai XLE from Hamer Toyota. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the

time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff FARROKHI visited Hamer Toyota in Los Angeles, California in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

93.    Plaintiff JONATHAN DEKELAITA is, and at all times relevant here, has been a resident of North Hollywood, California and, thus, a citizen of the state of California. Plaintiff DEKELAITA purchased a 2018 Toyota Mirai from Toyota Santa Monica in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff DEKELAITA visited Toyota Santa Monica to inquire about purchasing a 2018 Toyota Mirai, one or more Toyota salesperson specifically informed him that

the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

94.    Plaintiff ERIC DANG is, and at all times relevant here, has been a resident of San Jose, California, and, thus, a citizen of the state of California. Plaintiff purchased a brand new 2021 Toyota Mirai XLE from Stevens Creek Toyota in San Jose, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff visited Stevens Creek Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a

*PLAINTIFFS' FOURTH AMENDED COMPLAINT*
*[CLASS-ACTION]*

shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

95.    Plaintiff LYNNE DANG is, and at all times relevant here, has been a resident of San Jose, California, and, thus, a citizen of the state of California. Plaintiff purchased a brand new 2021 Toyota Mirai XLE from Stevens Creek Toyota in San Jose, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff visited Stevens Creek Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

96.     Plaintiff AARON HAN is, and at all times relevant here, has been a resident of Fremont, California, and, thus, a citizen of the state of California. Plaintiff HAN purchased a brand new 2021 Toyota Mirai from Stevens Creek Toyota in San Jose, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff HAN visited Stevens Creek Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

97.     Plaintiff MITCH PHAM is, and at all times relevant here, has been a resident of San Jose, California, and, thus, a citizen of the state of California. Plaintiff PHAM purchased a brand new 2021 Toyota Mirai from Stevens Creek Toyota in San Jose, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state

are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff PHAM visited Stevens Creek Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

98.     Plaintiff VU DUC NGUYEN is, and at all times relevant here, has been a resident of Westminster, California, and, thus, a citizen of the state of California. Plaintiff NGUYEN purchased a brand new 2022 Toyota Mirai XLE from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff NGUYEN visited Tustin Toyota in Tustin, California in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle

---

52

is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

99.    Plaintiff CHARLES JOHNSON is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff JOHNSON purchased a brand new 2023 Toyota Mirai XLE from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff JOHNSON visited Santa Monica Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle,

53

believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

100.    Plaintiff JOSE MARTINEZ is, and at all times relevant here, has been a resident of La Puente, California, and, thus, a citizen of the state of California. Plaintiff MARTINEZ purchased a Certified Pre-Owned 2019 Toyota Mirai from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MARTINEZ visited Longo Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

101.    Plaintiff HERIBERTO GONZALEZ is, and at all times relevant here, has been a resident of Torrance, California, and, thus, a citizen of the state of California. Plaintiff GONZALEZ purchased a 2023 Toyota Mirai Limited from Toyota of Santa Monica in Santa

Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did have. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff GONZALEZ visited Toyota of Santa Monica in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

102. Plaintiff MICHAEL D. PHILIPS is, and at all times relevant here, has been a resident of San Marcos, California, and, thus, a citizen of the state of California. Plaintiff PHILIPS purchased a brand new 2021 Toyota Mirai XLE from Toyota of Orange in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff PHILIPS visited Toyota of Orange in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

103.    Plaintiff JENNY LI is, and at all times relevant here, has been a resident of San Diego, California, and, thus, a citizen of the state of California. Plaintiff JENNY LI purchased a brand new 2021 Toyota Mirai XLE from Toyota of Orange in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff JENNY LI visited Toyota of Orange in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected

to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

104.    Plaintiff HAITAO LI is, and at all times relevant here, has been a resident of San Diego, California, and, thus, a citizen of the state of California. Plaintiff HAITAO LI purchased a brand new 2022 Toyota Mirai XLE from Toyota of Orange in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff HAITAO LI visited Toyota of Orange in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been

fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

105.    Plaintiff TYMAN EUGENE SMALL JR. is, and at all times relevant here, has been a resident of Fairfield, California, and, thus, a citizen of the state of California. Plaintiff SMALL JR. purchased a brand new 2023 Toyota Mirai XLE from Toyota of Dublin in Dublin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff SMALL JR visited Toyota of Dublin in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

106.    Plaintiff JIM PETER PRINCE is, and at all times relevant here, has been a resident of Woodland Hills, California, and, thus, a citizen of the state of California. Plaintiff PRINCE purchased a brand new 2022 Toyota Mirai from Toyota of Santa Monica in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen

infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff PRINCE visited Toyota of Santa Monica in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

107.    Plaintiff ANDREA NOAH is, and at all times relevant here, has been a resident of Sacramento, California, and, thus, a citizen of the state of California. Plaintiff NOAH purchased a brand new 2021 Toyota Mirai XLE from Roseville Toyota in Roseville, California.  Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff NOAH visited Roseville Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available.

Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

108.    Plaintiff GILBERT SABALA is, and at all times relevant here, has been a resident of Compton, California, and, thus, a citizen of the state of California. Plaintiff SABALA leased a brand new 2023 Toyota Mirai XLE from Longo Toyota in El Monte, California.  Plaintiff leased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of lease. Plaintiff leased the Toyota Mirai with the understanding that he could regularly use his vehicle. However, he quickly found that stations are unreliable, frequently offline, or entirely shut down. Stations marked as "available" on his vehicle's application often turn out to be inoperable upon arrival, forcing him to search for fuel across the city. Because of the unreliable fueling network, Plaintiff is unable to use the Mirai for commuting or long-distance travel. The limited functional stations require extensive detours and long wait times, making the car impractical. These are just a few examples of Plaintiff's experiences with his Toyota Mirai and all allegations set forth in the complaint apply to this Plaintiff as well.

Furthermore, when Plaintiff SABALA visited Longo Toyota in El Monte, California on or about 2023 to inquire about leasing a 2023 Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and

therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the lease of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have leased the Mirai or would have paid less for it.

109.    Plaintiff KITJA HORPAYAK is, and at all times relevant here, has been a resident of San Diego, California, and, thus, a citizen of the state of California. Plaintiff HORPAYAK purchased a brand new 2023 Toyota Mirai XLE from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff HORPAYAK visited Tustin Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving

range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

110.    Plaintiff PEILIN WU is, and at all times relevant here, has been a resident of San Francisco, California and, thus, a citizen of the state of California. Plaintiff WU purchased a brand new 2021 Toyota Mirai Limited from Stevens Creek Toyota in San Jose, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff WU visited Stevens Creek Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

111.    Plaintiff JAYSHREE MAKHIJANI is, and at all times relevant here, has been a resident of Corona, California, and, thus, a citizen of the state of California. Plaintiff MAKHIJANI purchased a Certified Pre-Owned 2017 Toyota Mirai from CarMax in 2021. Plaintiff purchased the Toyota Mirai based on Toyota's assurances and statements regarding the

availability of hydrogen and expansion of hydrogen infrastructure both through Toyota's press releases and Toyota's website. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, despite reviewing representations made by Toyota about the Mirai vehicle, there were no representations made online, through advertisements or otherwise, stating that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota, and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

112.     Plaintiff SAEED AMINI RAOUFPOUR is, and at all times relevant here, has been a resident of Irvine, California, and, thus, a citizen of the state of California. Plaintiff RAOUFPOUR purchased a Certified Pre-Owned 2017 Toyota Mirai. Plaintiff purchased the Toyota Mirai based on Toyota's assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure both through Toyota's press releases and Toyota's website. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, despite reviewing representations made by Toyota about the Mirai vehicle, there were no representations made online, through advertisements or otherwise, stating that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no

representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota, and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

113.    Plaintiff PATRICK CYCCONE JR. is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff CYCCONE JR. purchased a brand new 2022 Toyota Mirai XLE from Hamer Toyota in Mission Hills, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff CYCCONE JR. visited Hamer Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been

fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

114.    Plaintiff MEJIA SEARLES ARNALDO is, and at all times relevant here, has been a resident of Hayward, California, and, thus, a citizen of the state of California. Plaintiff ARNALDO purchased a 2022 Toyota Mirai XLE from San Francisco Toyota in San Francisco, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff ARNALDO visited San Francisco Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

115.    Plaintiff KI RYUN SHIN is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff SHIN purchased a brand new 2021 Toyota Mirai XLE from Hamer Toyota in Mission Hills, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the

time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff SHIN visited Hamer Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

116.    Plaintiff JESSICA MORALES is, and at all times relevant here, has been a resident of Oceanside, California, and, thus, a citizen of the state of California. Plaintiff MORALES purchased a Certified Pre-Owned 2020 Toyota Mirai Limited from Toyota of Tustin in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MORALES visited Toyota of Tustin in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily

available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

117.    Plaintiff SHANTALA KONAKANCHI is, and at all times relevant here, has been a resident of Saratoga, California, and, thus, a citizen of the state of California. Plaintiff KONAKANCHI purchased a brand new 2021 Toyota Mirai XLE from Stevens Creek Toyota in San Jose, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff KONAKANCHI visited Stevens Creek Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any

disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

118.    Plaintiff ARAZ A. ARBAB is, and at all times relevant here, has been a resident of Placentia, California, and, thus, a citizen of the state of California. Plaintiff ARBAB purchased a 2021 Toyota Mirai Limited from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff ARBAB visited Longo Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

119.    Plaintiff SHANTIA HASSANSHAHI is, and at all times relevant here, has been a resident of Encino, California, and, thus, a citizen of the state of California. Plaintiff HASSANSHAHI purchased a Certified Pre-Owned 2018 Toyota Mirai from Toyota of Orange

in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff HASSANSHAHI visited Toyota of Orange to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

120.    Plaintiff JAMES ASTUNO is, and at all times relevant here, has been a resident of La Jolla, California, and, thus, a citizen of the state of California. Plaintiff ASTUNO purchased a brand new 2021 Toyota Mirai XLE from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff ASTUNO visited Longo Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

121.    Plaintiff MARK COMPTON is, and at all times relevant here, has been a resident of Los Alamitos, California, and, thus, a citizen of the state of California. Plaintiff COMPTON leased two Toyota Mirai vehicles, 2017 model and 2019 model, from Toyota of Orange in Orange, California.    Plaintiff leased the Toyota Mirai vehicles based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of leasing said vehicles. He also leased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, each time Plaintiff COMPTON visited Toyota of Orange in or about 2017 and again in 2019, to inquire about lease a Toyota Mirai, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost

70

of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the leases of his vehicles, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have leased the Mirai vehicles or would have paid less for it.

122.    Plaintiff BHARGAV DABHI is, and at all times relevant here, has been a resident of Lake Forest, California, and, thus, a citizen of the state of California. Plaintiff DABHI purchased a brand new 2021 Toyota Mirai XLE from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff DABHI visited Tustin Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been

71

fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

123.    Plaintiff FITZHUGH SWAIN is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff SWAIN purchased a brand new 2023 Toyota Mirai from Toyota of Santa Monica in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff SWAIN visited Toyota of Santa Monica in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

124.    Plaintiff KOYA ANDERSON is, and at all times relevant here, has been a resident of Torrance, California, and, thus, a citizen of the state of California. Plaintiff ANDERSON purchased a brand new 2022 Toyota Mirai XLE from Toyota of Santa Monica in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen

infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff ANDERSON visited Toyota of Santa Monica in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

125. Plaintiff YOUSOF FOTOVAT is, and at all times relevant here, has been a resident of Reseda, California, and, thus, a citizen of the state of California. Plaintiff FOTOVAT purchased a brand new 2023 Toyota Mirai XLE from Hamer Toyota in Mission Hills, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff FOTOVAT visited Hamer Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available.

Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

126.    Plaintiff EDWARD BROWN is, and at all times relevant here, has been a resident of Redondo Beach, California, and, thus, a citizen of the state of California. Plaintiff BROWN purchased a brand new 2022 Toyota Mirai Limited from Hamer Toyota in Mission Hills, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff BROWN visited Hamer Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any

disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

127.    Plaintiff DEBRA BARD JAVERBAUM is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff JAVERBAUM purchased two Toyota Mirai vehicles, a brand new 2021 Toyota Mirai purchased in 2021, and a Certified Pre-Owned 2019 Toyota Mirai purchased in 2022, both from Toyota Santa Monica in Santa Monica, California. Plaintiff purchased the two vehicles based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the two Toyota Mirai vehicles based on representations that they had an extended driving range, but in reality, they do not meet those ranges on a full tank. Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicles for daily use.

Furthermore, each time Plaintiff JAVERBAUM visited Toyota Santa Monica in or about October 2021 and June 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the 2019 Mirai had a driving range of 312-miles per tank, while the 2021 Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicles, believing that these vehicles would meet her driving needs. Had she known that the actual driving range for these vehicles were significantly lower than what was represented by Toyota's

salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

128.    Plaintiff LYDIA J. SCHNITTA is, and at all times relevant here, has been a resident of San Marcos, California, and, thus, a citizen of the state of California. Plaintiff SCHNITTA purchased a brand new 2021 Toyota Mirai XLE from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff SCHNITTA visited Longo Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

129.    Plaintiff WEIGUO ZHU is, and at all times relevant here, has been a resident of Palos Verdes Peninsula, California, and, thus, a citizen of the state of California. Plaintiff ZHU purchased a brand new 2021 Toyota Mirai XLE from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen

infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff ZHU visited Santa Monica Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

130.    Plaintiff SHEN LING is, and at all times relevant here, has been a resident of Rolling Hills Estates, California, and, thus, a citizen of the state of California. Plaintiff LING purchased a brand new 2021 Toyota Mirai XLE from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff LING visited Santa Monica Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily

available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

131.    Plaintiff JEFFREY S. WHITCOMB is, and at all times relevant here, has been a resident of Dallas, Texas, and, thus, a citizen of the state of Texas. Plaintiff WHITCOMB originally purchased a 2022 Toyota Mirai Limited which was totaled as a result of a minor car accident. He then purchased a Certified Pre-Owned 2021 Toyota Mirai XLE from Toyota of Orange in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff WHITCOMB visited Toyota of Orange to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a

shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

132.    Plaintiff WAQAR A. SIDDIQUI is, and at all times relevant here, has been a resident of Sunnyvale, California, and, thus, a citizen of the state of California. Plaintiff SIDDIQUI purchased a brand new 2022 Toyota Mirai XLE from Toyota Sunnyvale in Sunnyvale, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff SIDDIQUI visited Toyota Sunnyvale in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

133.    Plaintiff EDBERTO A. RECINOS is, and at all times relevant here, has been a resident of Elverta, California, and, thus, a citizen of the state of California. Plaintiff RECINOS purchased a brand new 2022 Toyota Mirai from Roseville Toyota in Roseville, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff RECINOS visited Roseville Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

134.    Plaintiff EDWARD HERNANDEZ is, and at all times relevant here, has been a resident of Montebello, California, and, thus, a citizen of the state of California. Plaintiff HERNANDEZ purchased a brand new 2022 Toyota Mirai XLE from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover,

Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff HERNANDEZ visited Longo Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

135.    Plaintiff OSCAR GARCIA NEVAREZ is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff NEVAREZ purchased a brand new 2022 Toyota Mirai XLE from Glendale Toyota in Glendale, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff NEVAREZ visited Glendale Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the

design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

136.    Plaintiff TRITH DADLANI is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff DADLANI purchased a Certified Pre-Owned 2017 Toyota Mirai from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff DADLANI visited Santa Monica Toyota in or about 2020 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range

was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

137.    Plaintiff AVA BAREKAT is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff BAREKAT purchased a brand new 2023 Toyota Mirai from Toyota of Orange in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff BAREKAT visited Toyota of Orange in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

138.    Plaintiff JEROME LOUIS LUCERA is, and at all times relevant here, has been a resident of Goleta, California, and, thus, a citizen of the state of California. Plaintiff LUCERA purchased a Certified Pre-Owned 2019 Toyota Mirai from Hamer Toyota in Mission Hills, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives'

assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff LUCERA visited Hamer Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

139.    Plaintiff VIVIANA GONZALEZ is, and at all times relevant here, has been a resident of Santa Barbara, California, and, thus, a citizen of the state of California. Plaintiff GONZALEZ purchased a Certified Pre-Owned 2019 Toyota Mirai from Toyota Santa Monica in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff GONZALEZ visited Toyota Santa Monica in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed

him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

140.    Plaintiff DANIEL VALENZUELA is, and at all times relevant here, has been a resident of Moreno Valley, California, and, thus, a citizen of the state of California. Plaintiff VALENZUELA purchased a brand new 2022 Toyota Mirai XLE from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff VALENZUELA visited Tustin Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a

shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

141.    Plaintiff JOSHUA ROBINSON is, and at all times relevant here, has been a resident of Rocklin, California, and, thus, a citizen of the state of California. Plaintiff ROBINSON purchased a brand new 2021 Toyota Mirai from Roseville Toyota in Roseville, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff ROBINSON visited Roseville Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

142.    Plaintiff JAMES KRUG is, and at all times relevant here, has been a resident of Burban, California, and, thus, a citizen of the state of California. Plaintiff KRUG purchased a brand new 2022 Toyota Mirai XLE from Toyota of Orange in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff KRUG visited Toyota of Orange in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

143.    Plaintiff MAURICIO PIERRE VASQUEZ is, and at all times relevant here, has been a resident of Concord, California, and, thus, a citizen of the state of California. Plaintiff VASQUEZ purchased a brand new 2022 Toyota Mirai XLE from Dublin Toyota in Dublin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover,

Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff VASQUEZ visited Dublin Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

144.    Plaintiff MARVIN ALEXANDER ORELLANA is, and at all times relevant here, has been a resident of Inglewood, California, and, thus, a citizen of the state of California. Plaintiff ORELLANA purchased a brand new 2023 Toyota Mirai XLE from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff ORELLANA visited Tustin Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the

design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

145.   Plaintiff RICHARD COLLETT is, and at all times relevant here, has been a resident of Santa Monica, California, and, thus, a citizen of the state of California. Plaintiff COLLETT purchased a brand new 2022 Toyota Mirai XLE from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff COLLETT visited Santa Monica Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range

was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

146.    Plaintiff MANFRED REMES is, and at all times relevant here, has been a resident of Capistrano, California, and, thus, a citizen of the state of California. Plaintiff REMES purchased a Certified Pre-Owned 2018 Toyota Mirai in 2022 from Longo Toyota in El Monte, California, and that same year, he purchased a second Certified Pre-Owned 2019 Toyota Mirai vehicle from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai vehicles based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai vehicles based on representations that they had an extended driving range, which in reality they did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicles for daily use.

Furthermore, when Plaintiff REMES visited Longo Toyota and Santa Monica Toyota in or about February 2022 and June 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that both the 2018 and 2019 Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salespersons made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicles, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salespersons, and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai vehicles or would have paid less for them.

147.    Plaintiff KARIMULLAH BAYANZAY is, and at all times relevant here, has been a resident of Fremont, California, and, thus, a citizen of the state of California. Plaintiff BAYANZAY purchased a brand new 2023 Toyota Mirai XLE from Dublin Toyota in Dublin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff BAYANZAY visited Dublin Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

148.    Plaintiff LAKIESHA MILNER is, and at all times relevant here, has been a resident of Carson, California, and, thus, a citizen of the state of California. Plaintiff MILNER purchased a Certified Pre-Owned 2021 Toyota Mirai from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the

state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MILNER visited Tustin Toyota in or about 2024 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

149.    Plaintiff DAVID RAD is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff RAD purchased a brand new 2021 Toyota Mirai Limited from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff RAD visited Santa Monica Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design

of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

150.    Plaintiff DANIEL ATKINS is, and at all times relevant here, has been a resident of Corona, California, and, thus, a citizen of the state of California. Plaintiff ATKINS purchased a Certified Pre-Owned 2018 Toyota Mirai from Toyota of Orange in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff ATKINS visited Toyota of Orange in or about 2020 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range

was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

151.    Plaintiff DAVID A. BAKER is, and at all times relevant here, has been a resident of San Diego, California, and, thus, a citizen of the state of California. Plaintiff BAKER purchased a brand new 2023 Toyota Mirai XLE from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff BAKER visited Tustin Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

152.    Plaintiff MARCUS D. MOORE is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff MOORE purchased a Certified Pre-Owned 2017 Toyota Mirai from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales

representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MOORE visited Santa Monica Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

153.    Plaintiff CAREN ARSENEAULT is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff ARSENEAULT purchased a Certified Pre-Owned 2019 Toyota Mirai from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff ARSENEAULT visited Santa Monica Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically

informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

154.    Plaintiff NANCY E. MCCORD is, and at all times relevant here, has been a resident of Santa Monica, California, and, thus, a citizen of the state of California. Plaintiff MCCORD purchased a Certified Pre-Owned 2022 Toyota Mirai from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MCCORD visited Santa Monica Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a

shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

155.    Plaintiff DAVID P. SINGERMAN is, and at all times relevant here, has been a resident of Hawthorne, California, and, thus, a citizen of the state of California. Plaintiff SINGERMAN purchased a brand new 2024 Toyota Mirai XLE from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff SINGERMAN visited Santa Monica Toyota in or about 2024 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

*PLAINTIFFS' FOURTH AMENDED COMPLAINT*
*[CLASS-ACTION]*

156.    Plaintiff JAY S. FLEMING is, and at all times relevant here, has been a resident of Norwalk, California, and, thus, a citizen of the state of California. Plaintiff FLEMING purchased a Certified Pre-Owned 2019 Toyota Mirai from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff FLEMING visited Tustin Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

157.    Plaintiff WILLIAM BAKER is, and at all times relevant here, has been a resident of San Jose, California, and, thus, a citizen of the state of California. Plaintiff BAKER purchased a brand new 2023 Toyota Mirai Limited from Dublin Toyota in Dublin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state

98

are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff BAKER visited Dublin Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

158.    Plaintiff MICHAEL L. SANDS is, and at all times relevant here, has been a resident of Diamond Bar, California, and, thus, a citizen of the state of California. Plaintiff SANDS purchased a Certified Pre-Owned 2019 Toyota Mirai from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff SANDS visited Longo Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design

of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

159.    Plaintiff DIANE MARQUEZ is, and at all times relevant here, has been a resident of Whittier, California, and, thus, a citizen of the state of California. Plaintiff MARQUEZ purchased a brand new 2023 Toyota Mirai from Toyota of Orange in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MARQUEZ visited Toyota of Orange in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range

was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

160.    Plaintiff DANIEL CALDERON is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff CALDERON purchased a brand new 2022 Toyota Mirai XLE from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff CALDERON visited Santa Monica Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

161.    Plaintiff IAN ETHAN VLOKE-WURTH is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff VLOKE-WURTH purchased a Certified Pre-Owned 2017 Toyota Mirai from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales

*PLAINTIFFS' FOURTH AMENDED COMPLAINT*
*[CLASS-ACTION]*

representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff VLOKE-WURTH visited Longo Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

162.    Plaintiff MARIA VEGA is, and at all times relevant here, has been a resident of Bell, California, and, thus, a citizen of the state of California. Plaintiff VEGA purchased a brand new 2022 Toyota Mirai XLE from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff VEGA visited Longo Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available.

Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

163.    Plaintiff DANIEL M. POPPERS is, and at all times relevant here, has been a resident of Rancho Mirage, California, and, thus, a citizen of the state of California. Plaintiff POPPERS purchased a Certified Pre-Owned 2017 Toyota Mirai from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff POPPERS visited Tustin Toyota in or about 2024 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any

---

103

disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

164.    Plaintiff JOHN MOORE is, and at all times relevant here, has been a resident of Long Beach, California, and, thus, a citizen of the state of California. Plaintiff MOORE purchased a brand new 2023 Toyota Mirai XLE from Toyota of Orange in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MOORE visited Toyota of Orange in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

165.    Plaintiff SAYED MOJADIDI is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff MOJADIDI

purchased a brand new 2023 Toyota Mirai from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MOJADIDI visited Santa Monica Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

166.    Plaintiff RUBEN OROZCO is, and at all times relevant here, has been a resident of Pacoima, California, and, thus, a citizen of the state of California. Plaintiff OROZCO purchased a brand new 2022 Toyota Mirai from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff OROZCO visited Santa Monica Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

167.    Plaintiff GAREGIN MKHITARYAN is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff MKHITARYAN purchased a Certified Pre-Owned 2017 from Toyota of Orange in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MKHITARYAN visited Toyota of Orange in or about 2020 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected

to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

168.    Plaintiff MATTHEW R. LESSINGER is, and at all times relevant here, has been a resident of Alameda, California, and, thus, a citizen of the state of California. Plaintiff LESSINGER purchased a brand new 2021 Toyota Mirai from Toyota of San Francisco in San Francisco, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff LESSINGER visited Toyota of San Francisco in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been

fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

169.    Plaintiff CHRISTOPHER RUIZ is, and at all times relevant here, has been a resident of Anaheim, California, and, thus, a citizen of the state of California. Plaintiff RUIZ purchased a brand new 2023 Toyota Mirai XLE from Toyota of Orange in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff RUIZ visited Toyota of Orange in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

170.    Plaintiff GARRY MKRTCHYAN is, and at all times relevant here, has been a resident of Glendale, California, and, thus, a citizen of the state of California. Plaintiff MKRTCHYAN purchased a brand new 2022 Toyota Mirai XLE from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen

---

infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MKRTCHYAN visited Longo Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

171. Plaintiff LAURA BEHJAN is, and at all times relevant here, has been a resident of Thousand Oaks, California, and, thus, a citizen of the state of California. Plaintiff BEHJAN purchased a brand new 2023 Toyota Mirai Limited from Longo Toyota in El Monte, California. Prior to that, she leased two Mirai vehicles, a 2018 and a 2021 Mirai from Santa Monica Toyota and Hamer Toyota respectively. Plaintiff purchased and leased the three (3) Toyota Mirai vehicles based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase/lease. She also purchased and leased the Toyota Mirai vehicles based on representations that they had an extended driving range, which in reality they did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff BEHJAN visited the various Toyota dealerships in 2018, 2021 and 2023 to inquire about purchasing and leasing Toyota Mirai vehicles, one or more Toyota salesperson specifically informed her that the 2023 Mirai had a driving range of 357-miles per tank, that the 2018 Mirai had a driving range of 312-miles per tank, and that the 2021 Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicles, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

172.    Plaintiff GINA TOWNSEND is, and at all times relevant here, has been a resident of Huntington Beach, California, and, thus, a citizen of the state of California. Plaintiff TOWNSEND purchased a brand new 2022 Toyota Mirai XLE from Longo Toyota in El Monte, California, and leased a 2019 Toyota Mirai XLE from Toyota of Orange. Plaintiff purchased and leased the Toyota Mirai vehicles based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase/lease. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff TOWNSEND visited Toyota dealerships in or about 2019 and 2022 to inquire about purchasing/leasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no

representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicles, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salespersons, and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased or leased the Mirai vehicles or would have paid less for them.

173.    Plaintiff EHAN GOOD is, and at all times relevant here, has been a resident of Cayucos, California, and, thus, a citizen of the state of California. Plaintiff GOOD purchased a Certified Pre-Owned 2023 Toyota Mirai from Toyota of Glendale in Glendale, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff GOOD visited Toyota of Glendale in or about 2024 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any

disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

174.    Plaintiff MANU NOMURA is, and at all times relevant here, been a resident of Corona, California, and, thus, a citizen of the state of California. Plaintiff NOMURA purchased a Certified Pre-Owned 2019 Toyota Mirai from Toyota of Orange in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff NOMURA visited Toyota of Orange in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

175.    Plaintiff MOHAMMAD NAJAFI is, and at all times relevant here, has been a resident of Palos Verdes Peninsula, California, and, thus, a citizen of the state of California.

Plaintiff NAJAFI purchased a brand new 2023 Toyota Mirai from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff NAJAFI visited Santa Monica Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

176. Plaintiff FERDINAND CALINGASAN is, and at all times relevant here, has been a resident of Lomita, California, and, thus, a citizen of the state of California. Plaintiff CALINGASAN purchased a brand new 2022 Toyota Mirai XLE from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

113

Furthermore, when Plaintiff CALINGASAN visited Santa Monica Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

177.    Plaintiff MICHAEL MEDVEDEV is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff MEDVEDEV purchased a Certified Pre-Owned 2019 Toyota Mirai from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MEDVEDEV visited Santa Monica Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected

to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

178.    Plaintiff JASMINE J. WALKER is, and at all times relevant here, has been a resident of Carson, California, and, thus, a citizen of the state of California. Plaintiff WALKER purchased a brand new 2023 Toyota Mirai from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff WALKER visited Longo Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she

been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

179.    Plaintiff SYLVIA CHOY is, and at all times relevant here, has been a resident of Chicago, Illinois, and, thus, a citizen of the state of Illinois. Plaintiff CHOY purchased a Certified Pre-Owned 2021 Toyota Mirai from Toyota of Orange in Orange, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff CHOY visited Toyota of Orange in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

180.    Plaintiff LAYNE CHRISTOPHER MOREY is, and at all times relevant here, has been a resident of Montrose, California, and, thus, a citizen of the state of California. Plaintiff MOREY purchased a brand new 2021 Toyota Mirai XLE from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion

of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MOREY visited Santa Monica Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

181.    Plaintiff ASHIA SOUDER is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff SOUDER purchased a Certified Pre-Owned 2021 Toyota Mirai from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff SOUDER visited Longo Toyota in or about 2025 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available.

Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

182.    Plaintiff KEVIN MANCHA is, and at all times relevant here, has been a resident of Alameda, California, and, thus, a citizen of the state of California. Plaintiff MANCHA purchased a brand new 2023 Toyota Mirai XLE from San Francisco Toyota in San Francisco, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MANCHA visited San Francisco Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any

disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

183.    Plaintiff CYNTHIA FARRELLY GESNER is, and at all times relevant here, has been a resident of Malibu, California, and, thus, a citizen of the state of California. Plaintiff GESNER purchased a brand new 2021 Toyota Mirai XLE and leased a 2019 Toyota Mirai XLE from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff GESNER visited Santa Monica Toyota in 2019 and 2021 to inquire about purchasing and leasing Mirai vehicles, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salespersons made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicles is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase and lease of her vehicles, believing that the Mirai vehicles would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salespersons, and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for the vehicles.

184.    Plaintiff ERIK PENA is, and at all times relevant here, has been a resident of Apple Valley, California, and, thus, a citizen of the state of California. Plaintiff PENA purchased a brand

new 2023 Toyota Mirai XLE from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff PENA visited Longo Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

185.    Plaintiff ANDY MATTI is, and at all times relevant here, has been a resident of Irvine, California, and, thus, a citizen of the state of California. Plaintiff MATTI purchased a brand new 2022 Toyota Mirai XLE from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

*PLAINTIFFS' FOURTH AMENDED COMPLAINT*
*[CLASS-ACTION]*

Furthermore, when Plaintiff MATTI visited Tustin Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

186.     Plaintiff ROBERT KRANTZ is, and at all times relevant here, has been a resident of Porter Ranch, California, and, thus, a citizen of the state of California. Plaintiff KRANTZ purchased a brand new 2021 Toyota Mirai from Hamer Toyota in Mission Hills, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff KRANTZ visited Hamer Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected

to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

187.    Plaintiff RICHARD BALINT is, and at all times relevant here, has been a resident of Wesley Chapel, Florida, and, thus, a citizen of the state of Florida. Plaintiff BALINT purchased a Certified Pre-Owned 2018 Toyota Mirai from Toyota of San Francisco in San Francisco, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff BALINT visited Toyota of San Francisco in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been

---

122

fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

188.    Plaintiff BOBBIE M. MENDOZA is, and at all times relevant here, has been a resident of Whittier, California, and, thus, a citizen of the state of California. Plaintiff MENDOZA purchased a Certified Pre-Owned 2022 Toyota Mirai XLE from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MENDOZA visited Longo Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

189.    Plaintiff NAJIA SARWARI is, and at all times relevant here, has been a resident of Martinez, California, and, thus, a citizen of the state of California. Plaintiff SARWARI purchased a brand new 2023 Toyota Mirai XLE from Dublin Toyota in Dublin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure

at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff SARWARI visited Dublin Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

190.    Plaintiff RAYMOND E. COLLINS is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff COLLINS purchased a Certified Pre-Owned 2019 Toyota Mirai from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff COLLINS visited Santa Monica Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily

124

available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

191.    Plaintiff GLORIA E. VRANJICAN is, and at all times relevant here, has been a resident of Woodland Hills, California, and, thus, a citizen of the state of California. Plaintiff VRANJICAN purchased a brand new 2021 Toyota Mirai from Hamer Toyota in Mission Hills, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff VRANJICAN visited Hamer Toyota in or about 2021 to inquire about purchasing a Mirai vehicle one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any

disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

192.    Plaintiff MICHELLE CARTER is, and at all times relevant here, has been a resident of Bellflower, California, and, thus, a citizen of the state of California. Plaintiff CARTER leased a 2023 Toyota Mirai XLE from Longo Toyota in El Monte, California. Plaintiff leased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also leased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff CARTER visited Longo Toyota in or about 2023 to inquire about leasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the lease of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have leased the Mirai or would have paid less for it.

193.    Plaintiff FRANK TRUONG is, and at all times relevant here, has been a resident of El Monte, California, and, thus, a citizen of the state of California. Plaintiff TRUONG purchased a brand new 2024 Toyota Mirai XLE from Longo Toyota in El Monte, California.

126

Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff TRUONG visited Longo Toyota in or about 2024 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

194.    Plaintiff UT ANNA VUONG is, and at all times relevant here, has been a resident of Downey, California, and, thus, a citizen of the state of California. Plaintiff VUONG purchased a brand new 2022 Toyota Mirai Limited from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff VUONG visited Longo Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

195. Plaintiff ROMULO E. HUEZO is, and at all times relevant here, has been a resident of San Jose, California, and, thus, a citizen of the state of California. Plaintiff HUEZO purchased a brand new 2023 Toyota Mirai Limited from Stevens Creek Toyota in San Jose, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff HUEZO visited Stevens Creek Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 357-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected

to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

196.    Plaintiff HOOMAN MELAMED is, and at all times relevant here, has been a resident of Los Angeles, California, and, thus, a citizen of the state of California. Plaintiff MELAMED purchased a Certified Pre-Owned 2018 Toyota Mirai from Santa Monica Toyota in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MELAMED visited Santa Monica Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been

---

fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

197.    Plaintiff PETER COHEN is, and at all times relevant here, has been a resident of Torrance, California, and, thus, a citizen of the state of California. Plaintiff COHEN purchased a Certified Pre-Owned 2017 Toyota Mirai from Longo Toyota in El Monte, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff COHEN visited Longo Toyota in or about 2020 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

198.    Plaintiff AMBER NGUYEN is, and at all times relevant here, has been a resident of Garden Grove, California, and, thus, a citizen of the state of California. Plaintiff NGUYEN purchased a Certified Pre-Owned 2019 Toyota Mirai from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure

---

*PLAINTIFFS' FOURTH AMENDED COMPLAINT*
*[CLASS-ACTION]*

at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff NGUYEN visited Tustin Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

199.    Plaintiff MARK MANDEL is, and at all times relevant here, has been a resident of San Diego, California, and, thus, a citizen of the state of California. Plaintiff MANDEL purchased a brand new 2021 Toyota Mirai XLE from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff MANDEL visited Tustin Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available.

Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

200.    Plaintiff VIRGINIA L. THIELE is, and at all times relevant here, has been a resident of Aliso Viejo, California, and, thus, a citizen of the state of California. Plaintiff THIELE purchased a brand new 2023 Toyota Mirai XLE from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff THIELE visited Tustin Toyota in or about 2023 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 402-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any

disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

201.    Plaintiff JAMIEE HUSTED is, and at all times relevant here, has been a resident of Tustin, California, and, thus, a citizen of the state of California. Plaintiff HUSTED purchased a Certified Pre-Owned 2016 Toyota Mirai from Tustin Toyota in Tustin, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff HUSTED visited Tustin Toyota in or about 2019 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

202.    Plaintiff ONUR KARACANLI is, and at all times relevant here, has been a resident of Torrance, California, and, thus, a citizen of the state of California. Plaintiff

KARACANLI purchased a Certified Pre-Owned 2019 Toyota Mirai from Sunnyvale Toyota in Sunnyvale, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff KARACANLI visited Sunnyvale Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

203.    Plaintiff SERKAN SIYI is, and at all times relevant here, has been a resident of San Francisco, California, and, thus, a citizen of the state of California. Plaintiff SIYI purchased a Certified Pre-Owned 2018 Toyota Mirai from San Francisco Toyota in San Francisco, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff SIYI visited San Francisco Toyota in or about 2022 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

204.    Plaintiff BEVERLY BROCK is, and at all times relevant here, has been a resident of Santa Monica, California, and, thus, a citizen of the state of California. Plaintiff BROCK purchased a Certified Pre-Owned 2018 Toyota Mirai from Toyota Santa Monica in Santa Monica, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. She also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff BROCK visited Santa Monica Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed her that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected

to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of her vehicle, believing that the Mirai would meet her driving needs. Had she known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had she been fully informed of the true state of hydrogen availability, station reliability, and fuel costs, she would not have purchased the Mirai or would have paid less for it.

205.    Plaintiff SATWANT K. RAI is, and at all times relevant here, has been a resident of Antelope, California, and, thus, a citizen of the state of California. Plaintiff RAI purchased a Certified Pre-Owned 2018 Toyota Mirai from Stevens Creek Toyota in San Jose, California. Plaintiff purchased the Toyota Mirai based on Toyota and its sales representatives' assurances and statements regarding the availability of hydrogen and expansion of hydrogen infrastructure at the time of purchase. He also purchased the Toyota Mirai based on representations that it had an extended driving range, which in reality it did not. Moreover, Hydrogen stations across the state are frequently out of fuel or undergoing maintenance, making it nearly impossible to rely on the vehicle for daily use.

Furthermore, when Plaintiff RAI visited Stevens Creek Toyota in or about 2021 to inquire about purchasing a Mirai vehicle, one or more Toyota salesperson specifically informed him that the Mirai had a driving range of 312-miles per tank, and that hydrogen was readily available. Furthermore, at that time, the salesperson(s) made no representations to Plaintiff that due to a design defect, the real-world range of the Mirai vehicle is substantially limited given the design of the Mirai's fuel tank which affects its capacity and therefore range. Moreover, no representations were made to Plaintiff about the fact that the cost of hydrogen fuel was expected to greatly increase, and further, Defendants and their salesperson(s) did not disclose the fact that there were numerous issues with hydrogen stations including the lack of operating stations, and a shortage of hydrogen. Relying on the representations made, as well as the absence of any disclosure regarding these material issues, Plaintiff proceeded with the purchase of his vehicle, believing that the Mirai would meet his driving needs. Had he known that the actual driving range was significantly lower than what was represented by Toyota's salesperson(s), and had he been

fully informed of the true state of hydrogen availability, station reliability, and fuel costs, he would not have purchased the Mirai or would have paid less for it.

**DEFENDANTS**

206.   Defendants TOYOTA MOTOR SALES, U.S.A., INC. and TOYOTA MOTOR NORTH AMERICA, INC., are corporations incorporated under the laws of the State of California and are therefore citizens of California.

207.   Defendant TOYOTA MOTOR SALES, U.S.A., INC. is responsible for marketing, advertising, sale and distribution of Toyota's vehicles, including the Mirai vehicle. It manages Toyota's vehicle sales and promotional efforts, including but not limited to national advertising and marketing campaigns, and directly works with Toyota dealerships in doing so. On information and belief, among other things, Toyota Motor Sales, U.S.A., Inc. is directly responsible for, among other things, misrepresentations made to Plaintiffs and Class Members during their purchase of the subject Mirai vehicles.

208.   Defendant TOYOTA MOTOR NORTH AMERICA, INC. is responsible for development, manufacturing, sale, lease and corporate functions of Toyota's vehicles, including the Mirai. On information and belief, Defendant Toyota Motor North America, Inc. handles a broad range of functions including product planning, marketing strategies, and development, and provides corporate-level oversight for various Toyota subsidiaries in North America including Toyota Motor Sales, U.S.A., Inc. On information and belief, Toyota Motor North America, Inc. has oversight over Toyota's corporate actions in North America, and therefore, is responsible for, among other things, the misleading and deceptive marketing and communications alleged herein.

209.   At all relevant times, Defendants and each of them, inclusive, expected or should have expected that their acts would have consequences within the United States of America including the State of California and including Los Angeles County, as said Defendants derived and derive substantial revenue therefrom.

## JURISDICTION AND VENUE

210.   This Court has jurisdiction pursuant to 15 U.S.C. § 1127, 15 U.S.C. § 2310(d)(1) and Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., as well as other federal statutes.

211.   The Court has personal jurisdiction over all Defendants because they each have sufficient minimum contacts in California to render the exercise of jurisdiction by this Court

---

137

proper.  Defendants have intentionally availed themselves of markets within California through their promotion, distribution, and sale of their vehicles in this State.

212.  Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## CLASS ACTION ALLEGATIONS

213.  As further stated herein as to the following claims, Plaintiffs bring their causes of action on behalf of themselves and all others similarly situated, and certification of this class action is appropriate under California *Code of Civil Procedure* section 382 and California *Civil Code* section 1781, because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members.

214.  Plaintiffs seek certification of the following **California Class**: All California citizens who purchased or leased a Toyota Mirai vehicle.

215.  Excluded from the Class are Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as past and present employees, officers and directors of Defendants.  Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

**A.    Commonality**

216.  There are questions of law and fact that are common to the claims of Plaintiffs. Among these common questions are the following:

a.    Whether Defendants' representations and/or omissions regarding its Mirai vehicles were fraudulent;

b.    Whether Defendants violated California's Unfair Competition Law by misrepresenting material information to consumers regarding its Mirai vehicles;

c.    Whether Defendants violated California's Unfair Competition Law by concealing material information from consumers regarding its Mirai vehicles;

d.    Whether Defendants violated California's Unfair Competition Law by using uniform, deceptive business practices;

e.    Whether Defendants' conduct violates any of the applicable California  consumer protection statutes;

f.      Whether Defendants were unjustly enriched as a result of their conduct;

g.      Whether Class Members have been injured by Defendants' conduct;

h.      Whether, and to what extent, equitable relief and/or other relief should be imposed on Defendants, and, if so, the nature of such relief; and

i.      Whether Mirai vehicles are merchantable;

j.      Whether Defendants' marketing, advertising and promotion of the Mirai vehicles were false and misleading;

k.      Whether Defendants knew, or should have known, that their representations were false and misleading, or that they omitted material information;

**B.      Numerosity**

l.    The members of the Class are so numerous that separate joinder of each member is impracticable.  Plaintiffs are informed and believe that in the County of Los Angeles alone, the members of the Class would easily exceed the minimum numbers to satisfy this requirement.

**C.      Typicality**

m.      Plaintiffs' claims are typical of the claims of the Class since each of the Plaintiffs was subject to the same or similar practices by Defendants, as was each member of the Class. Plaintiffs and Class members were injured in the same manner by Defendants' course of conduct alleged herein.  Plaintiffs and all Class members have the same claims against Defendants' relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class Members. Plaintiffs and all Class members sustained monetary and economic injuries arising out of Defendants' conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

n.      The core issues which predominate over all the other issues in the litigation involve Defendants' unfair, unlawful, negligent and fraudulent practices discussed above.

o.      Upon information and belief, there has never been a prior lawsuit certified as a class on behalf of Plaintiffs based on the allegations in this Complaint.

**D.      Adequacy of Representation**

p.      Plaintiffs will fairly and adequately protect the interests of the Class and are committed to the vigorous prosecution of this action. They have retained competent counsel, experienced in litigation of this nature, to represent them and members of the Class.  There is no

hostility between Plaintiffs and the unnamed Class members. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

q.    To prosecute this case, Plaintiffs have chosen the law firm of Beverly Hills Trial Attorneys, P.C., whose attorneys have represented plaintiffs in class actions and as private attorneys general in bringing public interest actions.

**E.    Superiority**

r.    The questions of law or fact common to the claims of Plaintiffs and of each Class member predominate over any questions of law or fact affecting only individual members of the Class. All claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" representations by Defendants and other acts constituting negligence, unfair competition under the UCL, and fraudulent misrepresentations.

s.    Common issues predominate when as here, liability can be determined on a class-wide basis, even when there are some individualized damages.

t.    As a result, when determining whether common questions predominate, courts focus on the liability issue and if the liability issue is common to the class as in the case at bar, common questions are held to predominate over individual questions.

u.    Since all claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" failures by Defendants and other unfair competition laws under the UCL, the predominance requirement needed for class action treatment is satisfied.

v.    A class action is superior to thousands of individual actions in part because of the non-exhaustive factors listed below:

    a.  Joinder of all class members would create extreme hardship and inconvenience for the affected consumers because of their immense geographical dispersion.

    b.  It is highly unlikely that individual Plaintiffs would shoulder the burden of this vast and complex litigation as many are simply too poor or uneducated about Defendants' actions to bring separate actions;

    c.  The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

    d.  Individual suits would not be cost effective. The costs to individual Plaintiffs in a collective action are lowered through the pooling or resources and by

---

140

limiting the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity; and

e. The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

Defendants have also acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

## (FRAUDULENT CONCEALMENT AND MISREPRESENTATION)

217. Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

218. Defendants made false representations of fact to Plaintiffs and concealed material facts from Plaintiffs.

219. Plaintiffs are informed and believe, and on that basis allege, that Defendants deliberately concealed the true facts regarding Defendants' Mirai vehicle, as well as circumstances and facts connected to this vehicle.

220. Plaintiffs are informed and believe, that Defendants either deliberately concealed the true facts known to it or failed to make any reasonable investigation to determine the true facts from which representations were made as to its products and services to determine whether they are true or false, and without having any sufficient basis on which to make any representations, knowingly made false representations, and concealed the truth with regards to its products and services as set forth in the Complaint.

221. Specifically, prior to Plaintiffs' purchase/lease of the Mirai vehicles, Defendants concealed and misrepresented numerous facts. Specifically, they 1) failed to disclose to Plaintiffs and class members that the hydrogen fuel needed to operate the vehicle may be unavailable for days at a time; 2) failed to disclose that filling up the Mirai with hydrogen fuel takes longer than half an hour on average; 3) failed to disclose that many times hydrogen fuel pumps freeze up and lock onto the Mirai, resulting in Plaintiffs and other Mirai owners to have to wait over 30 minutes just so the fuel pump can warm up and be removed from the vehicle so that they can drive off; 4) ) failed to disclose that the price of hydrogen fuel has drastically increased over the last four years, and as such, the hydrogen fuel card in the amount of $15,000 which Toyota provided to Plaintiffs with a promise that it would last at least three to six years, would actually last much less than the

---

141

promised period, and failed to disclose that 5) the Mirai vehicles' actual driving range is not the same as what was promised to customers.

222.    These representations and promises made to Plaintiffs and the class members were in fact false. If these misrepresentations had not been made to Plaintiffs and the class members to induce them to purchase Defendants' vehicle, Plaintiffs would not have purchased a Toyota Mirai.

223.    At the time that these misrepresentations were made to Plaintiffs as alleged in the Complaint, Plaintiffs were ignorant of the falsity of these representations and believed them to be true.

224.    Plaintiffs reasonably and justifiably relied upon the intentional misrepresentations and concealments referenced above. This reliance was reasonable and justifiable in that Plaintiffs had no access to the truth underling the misrepresentations, while Defendants had access to said information.

225.    If Plaintiffs had been aware of the existence of the facts which were misrepresented and concealed by Defendants, Plaintiffs would not have proceeded forward with purchasing and/or leasing a Toyota Mirai.

226.    As a direct and proximate result of Defendants' misrepresentations and concealments, Plaintiffs have suffered and continues to suffer damages, including incidental and consequential damages, in an amount to be established at trial, plus interest at the legal rate. As a further proximate result of such conduct, Plaintiffs have incurred reasonable attorneys' fees.

227. Defendants engaged in the acts alleged above with a willful, conscious and/or reckless disregard of Plaintiffs' rights and with willful, conscious or reckless disregard for the consequences of such conduct to Plaintiffs. These acts were committed with the intent to vex, injure or annoy Plaintiffs and as such constitute oppression, fraud and malice under California Civil Code §3294. Accordingly, Plaintiffs are entitled to and hereby requests punitive damages in a sum to be proven at trial to deter Defendant from so acting in the future.

## SECOND CAUSE OF ACTION
### (NEGLIGENT MISREPRESENTATION)

228.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

229.    Toyota had a duty to provide honest and accurate information to its customers so that customers could make informed decisions on the substantial purchase and/or lease of automobiles.

---

230.    The information withheld from Plaintiffs and Class members is material and would have been considered by a reasonable person, as are the misrepresentations regarding the Mirai vehicles, as detailed herein.

231.    Toyota specifically and expressly misrepresented material facts to Plaintiffs and Class members, as discussed above.

232.    Toyota knew or in the exercise of reasonable diligence should have known that the ordinary consumer would be misled by its misleading and deceptive advertisements and statements made by its salespersons and employees.

233.    Plaintiffs and Class members justifiably relied on Toyota's misrepresentation and have been damaged.

234.    If Plaintiffs had been aware of the existence of the facts which were misrepresented by Defendants, Plaintiffs would not have proceeded forward with purchasing and/or leasing a Toyota Mirai.

235.    As a direct and proximate result of Defendants' misrepresentations, Plaintiffs have suffered and continues to suffer damages, including incidental and consequential damages, in an amount to be established at trial, plus interest at the legal rate. As a further proximate result of such conduct, Plaintiffs have incurred reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

**(VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTIONS 17200, *ET SEQ.*)**

236.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

237.    Plaintiffs, pursuant to *Business and Professions Code* section 17204, bring this cause of action on behalf of themselves and as a private attorneys general.

238.    *Business and Professions Code* section 17200, *et seq*., also known as the Unfair Competition Law defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. The Unfair Competition Law imposes strict liability.  Plaintiffs need not prove that Defendants intentionally or negligently engaged in unlawful, unfair or fraudulent business practices – but only that such practices occurred.

***"Unlawful" Prong***

143

239.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

240.    As detailed in Plaintiffs' Cause of Action below, California *Civil Code* sections 1750, et seq., prohibits a business from engaging in sales practices that are deceptive or misrepresentations when offering goods and services to the general public.

241.    Defendants' unlawful business practices are ongoing, and unless enjoined under *Business & Professions Code* section 17203, and/or under section 17535, are likely to continue to deceive other members of the general public at the expense of Defendants' competitors.

242.    Defendants violated Cal. Bus. & Prof. Code sections 17200, *et seq.* by engaging in unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertising, including:

- Knowingly and intentionally concealing and failing to disclose to Plaintiffs and class members that the hydrogen fuel needed to operate the vehicle may be unavailable for days at a time;

- Knowingly and intentionally concealing and failing to disclose to Plaintiffs and class members that filling up the Mirai with hydrogen fuel takes longer than half an hour on average

- Knowingly and intentionally concealing and failing to disclose to Plaintiffs and class members that many times hydrogen fuel pumps freeze up and lock onto the Mirai, resulting in Plaintiffs and other Mirai owners to have to wait over 30 minutes just so the fuel pump can warm up and be removed from the vehicle so that they can drive off

- Knowingly and intentionally concealing and failing to disclose to Plaintiffs and class members that the price of hydrogen fuel will increase drastically, and as such, the hydrogen fuel card in the amount of $15,000 which Toyota provided to Plaintiffs with a promise that it would last at least three to six years, would actually last much less than the promised period

- Knowingly and intentionally concealing and failing to disclose to Plaintiffs and class members that the Mirai vehicles' actual driving range is not the same as what was promised to them

***"Unfair" Prong***

243.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

244.    Defendants' business practices are unfair under the UCL because Defendants have acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and the Class Members, as described above.

245.    Further, the impact of the practice against Plaintiffs and the Class Members far outweighs any possible justification or motive on the part of Defendants. The impact on Plaintiffs and the Class Members has been described.  Defendants can have no possible justification for engaging in immoral, unethical and substantially injurious act of charging Plaintiffs and the Class Members through misleading and deceptive conduct. Furthermore, Plaintiffs and the Class Members could not have reasonably avoided this injury because they relied on Defendants' advertising as to the quality and characteristics of the services being sold, as all consumers who rely on the verity of product advertising must do. Defendants' false advertising is also violative of public policy.

246.    The harm to Plaintiffs and Class members outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests other than the misleading and deceptive conduct described herein.

***"Fraudulent" Prong***

247.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

248.    Defendants' acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiffs into purchasing a product which is inoperable, unsafe and unreliable. Defendants' acts and practices are highly likely to deceive and have deceived members of the consuming public.

249.    Defendants' business practices, as alleged herein, also constitute fraudulent conduct because Defendants did not deliver the product they advertised. Defendants' representations and omissions in California were material because they were likely to deceive reasonable consumers.

---

*PLAINTIFFS' FOURTH AMENDED COMPLAINT*
*[CLASS-ACTION]*

250.     Plaintiffs and Class Members did not know about Defendants' improper practices when they purchased/leased Defendants' service. Accordingly, Defendants should not have omitted and/or misrepresented the facts surrounding their products.

251.     Defendants omitted and misrepresented material information pertaining to their products, and among other things, convinced Plaintiffs and Class Members to purchase these products, and to otherwise ensure that Plaintiffs and Class Members would not discover Defendants' underlying fraud regarding its omissions and misrepresentations regarding its Mirai vehicle. As a result, Defendants violated Cal. Penal Code § 502.

252.     Defendant's fraud led to consumers paying for a product that they would not have paid for if they knew the truth about it.

253.     As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent acts and practices, Plaintiffs and Class Members were injured and lost money.  They did not receive the benefit of the bargain in purchasing these Mirai vehicles, and they spent their own time and money dealing with various situations that arose as a result of Defendants' practices.

254.     Defendants acted intentionally, knowingly, and maliciously in violation of California's Unfair Competition Law.

255.     Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices, declaratory relief, reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5, injunctive relief, and other appropriate equitable relief.

256.     In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiffs also seek, in addition to damages, restitution and other equitable relief, to recover attorney fees under (i) section 1021.5 of the *Code of Civil Procedure*, and/or (ii) the "common fund" doctrine available to prevailing Plaintiffs who confer a benefit on the general public.

## **FOURTH CAUSE OF ACTION**
### **(VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW)**

257.     Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

258.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

259.    Defendants' conduct as alleged herein violates Cal. Bus. & Prof. Code § 17500 by intentionally making and disseminating statements to consumers in California and the general public concerning Defendants' vehicles, as well as circumstances and facts connected to such products, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendants to be untrue or misleading. Defendants have also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers and to the public as part of a plan or scheme with intent not to sell those products as advertised.

260.    Defendants violated Cal. Bus. & Prof. Code § 17500 by, *inter alia*: 1) failing to disclose to Plaintiffs and class members that the hydrogen fuel needed to operate the vehicle may be unavailable for days at a time; 2) that filling up the Mirai with hydrogen fuel takes longer than half an hour on average; 3) that many times hydrogen fuel pumps freeze up and lock onto the Mirai, resulting in Plaintiffs and other Mirai owners to have to wait over 30 minutes just so the fuel pump can warm up and be removed from the vehicle so that they can drive off; and that 4) the price of hydrogen fuel has drastically increased over the last four years, and as such, the hydrogen fuel card in the amount of $15,000 which Toyota provided to Plaintiffs with a promise that it would last at least three to six years, would actually last much less than the promised period, and that 5) the Mirai vehicles' actual driving range is not the same as what was promised to customers.

261.    Defendants' actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

262.    Plaintiffs and the members of the Classes were deceived by and relied on Defendants' statements and omissions to their detriment. Moreover, there is a strong probability that other consumers and members of the public were also or are likely to be deceived as well.

Any reasonable consumer would be misled by Defendants' false and misleading statements and material omissions.  Plaintiffs and other members of the Classes did not learn of all of the abovementioned issues until after they had already purchased and/or leased a Mirai vehicle.

263.    Plaintiffs and the Class lost money as a result of Defendants' violations because they would not have purchased a Mirai vehicle if the true facts about these vehicles were known to them.

264.    As a result of Defendants' misconduct pursuant to Cal. Bus. & Prof. Code § 17500, Plaintiffs and the Class are entitled to individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendants from continuing with their false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendants' relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

### (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (SONG-BEVERLY CONSUMER WARRANTY ACT)

265.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

266.    Toyota was at all relevant times a "merchant" as defined by Cal. Com. Code § 2314. Specifically, Defendants were in privity with Plaintiffs and class members at the time they purchased/leased the Mirai vehicles given that Toyota dealerships who sold or leased the subject vehicles were authorized agents of Defendants. Moreover, Defendants controlled and directed the marketing of its vehicles through its dealerships.

267.    Additionally, a warranty that the Mirai vehicles were in merchantable condition for the purpose of driving them is implied by law in the instant transactions. Under the Song-Beverly Act, an implied warranty of merchantability was created when Plaintiffs purchased or leased the Mirai. Toyota was obligated to ensure that the Mirai was fit for the ordinary purposes for which hydrogen fuel-cell vehicles are used, namely safe, reliable, and convenient transportation.

268.    However, these Mirai vehicles when sold and/or leased to Plaintiffs and the proposed class members, were not in merchantable condition and were not fit for the ordinary purpose for which they are used. Toyota sells the Mirai while assuring consumers that hydrogen

---

148

refueling is available, seamless, and comparable to refueling with gasoline, that is not the case, as there is a shortage of hydrogen fuel, which continues to become more and more difficult to obtain for consumers. This scarcity in the fuel makes the Mirai vehicles inoperable due to refueling difficulties, and renders these vehicles unsafe, unreliable and inoperable.

269.    Indeed, the Mirai vehicles are not fit for the ordinary purpose for which they were sold—safe, reliable transportation. Due to issues including but not limited to hydrogen fuel shortages, station malfunctions, and prohibitive costs, the Mirai vehicles have proven inoperable or unusable as intended, causing significant inconvenience and financial harm to Plaintiffs. The Mirai vehicle is not fit for its ordinary purpose as an operable passenger vehicle due to significant and pervasive defects in the hydrogen fuel infrastructure and inherent limitations of the vehicle. These defects include: The unavailability of hydrogen fuel, causing vehicles to become inoperable and leaving Plaintiffs stranded without a means to refuel; Frequent outages, malfunctions, and non-operational conditions at hydrogen fueling stations, which prevent Plaintiffs from refueling their vehicles reliably or within reasonable distances; The high price of hydrogen fuel, which has nearly tripled since Plaintiffs' purchases, making the vehicle prohibitively expensive to operate; and Design and performance issues, such as unexpectedly short fuel range, mechanical malfunctions (including infotainment system failures, autopilot malfunctions, and clunking noises), and excessive wear on vehicle components that further impair the vehicle's usability and safety.

270.    Due to the issues with hydrogen fuel availability, fueling infrastructure, and increased fuel costs, Plaintiffs allege that the Mirai's use and value are substantially impaired. The vehicle cannot be refueled reliably or economically as represented by Toyota, causing Plaintiffs ongoing inconvenience, additional costs, and financial strain. These issues prevent the Mirai from providing the dependable and affordable transportation that an average consumer would expect from a passenger vehicle.

271.    Plaintiffs allege that Toyota knew or should have known about the limitations in California's hydrogen fuel infrastructure, the increasing cost of hydrogen, and the challenges in refueling the Mirai prior to selling or leasing the vehicle to Plaintiffs. Despite this knowledge, Toyota failed to disclose these material issues and instead marketed the Mirai as a reliable hydrogen-powered alternative to traditional vehicles. Furthermore, Defendants have known about

these issues given the number of complaints they have received from Plaintiffs as well as from other class members both in person at their dealerships, and by other means.

272.    The Mirai has consistently failed to meet consumers' reasonable expectations of merchantability. The Song-Beverly Act requires that goods sold to California consumers be fit for ordinary use, yet Plaintiffs allege that Toyota's failure to ensure an adequate and reliable supply of hydrogen fuel, along with the Mirai's operational issues, makes the vehicle unfit for its intended purpose of reliable daily transportation. This falls below the minimum standard of quality and usability that the law demands for consumer vehicles.

273.    Despite Plaintiffs' numerous complaints regarding refueling difficulties, infrastructure issues, excessive fuel costs, and mechanical malfunctions, Toyota has failed to remedy these problems or provide a satisfactory alternative. Toyota's inadequate response to these defects, and failure to adequately support its Mirai vehicles, leave Plaintiffs with unusable and unreliable vehicles that do not meet basic expectations for merchantability.

274.    Defendants cannot disclaim or limit the implied warranty of merchantability as doing so would be unconscionable and unenforceable. Specifically, any purported warranty limitation is unenforceable because Defendants sold and leased an unusable vehicle without informing consumers about its risks and shortcomings. As such, a large disparity in bargaining power existed between Defendants, Plaintiffs and Class members.

275.    Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

276.    As a direct result of Toyota's breach of the implied warranty of merchantability, Plaintiffs have suffered economic harm, including but not limited to:

- Out-of-pocket expenses for alternative transportation due to the Mirai's unreliability;
- Inability to utilize the vehicle as expected, despite ongoing monthly lease or finance payments;
- Increased operating costs due to inflated hydrogen fuel prices that Toyota failed to address or disclose;
- Loss of resale value due to the unworkable nature of hydrogen fueling infrastructure and the vehicle's reputational decline.

---

277.    As a direct and proximate result of Defendants' breach of the warranty of merchantability, Plaintiffs and class members, have suffered and continue to suffer damages, including incidental and consequential damages, in an amount to be established at trial, plus interest at the legal rate.

## SIXTH CAUSE OF ACTION

### (VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT)

278.    Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

279.    The subject vehicles are "consumer products" under the MMWA. 15 U.S.C. § 2301(1).

280.    Plaintiffs and Class members are "consumers" under the MMWA. 15 U.S.C. § 2301(3).

281.    Defendants are "suppliers" and "warrantors" under the MMWA. 15 U.S.C. §2301(4)-(5).

282.    Through their implied warranties, Defendants warranted to Plaintiffs and Class members that the vehicles they purchased were free from defects, of merchantable quality, and fit for the ordinary purposes for which a vehicle is used.

283.    Defendants breached and refused to honor these implied promises. As a result of the various issues identified above, the vehicles are inoperable and fail to perform in accordance with their ordinary and intended purposes.

284.    Defendants have been given reasonable opportunities to cure their breaches of warranty. In fact, Defendants have had actual knowledge and ample notice that the vehicles are defective as detailed above but have failed to provide an adequate remedy and have continued to sell these defective vehicles to consumers.

285.    For the reasons set forth in paragraphs 113, *supra*, Defendants' durational limitation on implied warranties is unconscionable and unenforceable under 15 U.S.C. § 2308(b).

286.    The amount in controversy for purposes of Plaintiffs' individual claims exceeds $25. The amount in controversy in this action exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be adjudicated in the suit.

287.    As a direct and proximate result of Defendants' breaches of its implied warranty pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

288.    Plaintiffs also seek costs and expenses, including reasonable attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

### SEVENTH CAUSE OF ACTION

**(Unjust Enrichment)**

289.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

290.    Plaintiffs and Class Members were enticed to purchase Defendants' Mirai vehicles, which were not as Defendants represented them to be.

291.    Had Plaintiffs and the Class known of the fact that 1) at times hydrogen fuel may be unavailable for days at a time; 2) that filling up the Mirai with hydrogen fuel takes longer than half an hour on average; 3) that many times hydrogen fuel pumps freeze up and lock onto the Mirai, resulting in Plaintiffs and other Mirai owners to have to wait over 30 minutes just so the fuel pump can warm up and be removed from the vehicle so that they can drive off; 4) the price of hydrogen fuel has drastically increased over the last four years, and as such, Toyota's false promise that the Mirai comes with a hydrogen fuel card in the amount of $15,000 which will last for three to six years or more is false, they would not have purchased Defendants' Mirai vehicles, and that 5) the  Mirai vehicles' actual driving range is not the same as what was promised to customers

292.    Accordingly, Plaintiffs and Class Members were damaged, and Defendants were unjustly enriched, given that they misrepresented their product to Plaintiffs and defrauded them into purchasing said product. Toyota has benefited and been enriched by the conduct alleged herein. Toyota has generated millions of dollars of revenue from the unlawful conduct described above and has had knowledge of this benefit.

293.    Toyota has voluntarily accepted and retained this benefit.

294.    The circumstances, as described herein, are such that it would be inequitable for Toyota to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the Class.

---

295.    Plaintiffs and the Class are entitled to the amount of Toyota's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair and inequitable conduct as alleged herein.

296.    Furthermore, Defendants' conduct was willful, intentionally deceptive, and intended to cause economic injury to Plaintiffs and the Class. Defendants are therefore liable to pay punitive damages.

297.    Plaintiffs and Class Members are entitled to damages in the amount Defendants were unjustly enriched, to be determined at trial.

## PRAYER FOR RELIEF

298.    Plaintiffs, individually, and on behalf of all others similarly situated pray for relief and judgment against Defendants as follows:

(a)    An order certifying the Class and designating all of the Plaintiffs as Class Representatives and their counsel as Class Counsel;

(b)    An order under the applicable causes of action set forth above:

i. Rescinding the sales of the Toyota Mirai vehicles purchased or leased by Plaintiffs and Class members and/or reimbursing Plaintiffs and the Class members (1) the purchase price for those vehicles or 2) all funds improperly obtained by Toyota as a result of any such acts and practices declared by this Court to be an unlawful, fraudulent, or an unfair business act or practice, or a violation of laws, statutes, or regulations, or constituting unfair competition, all as alleged herein;

ii. Disgorging all profits and compensation improperly obtained by Toyota as a result of such acts and practices declared by this Court to be an unlawful, fraudulent, or unfair business act or practice, a violation of laws, statutes, or regulations, or constituting unfair competition and as alleged herein; and

iii. Requiring that Toyota cease engaging in false advertising and other unlawful business practices by creating an informational campaign to correct its misrepresentations and material omissions;

(c)    Awarding Plaintiffs and the proposed Class members actual or compensatory damages according to proof;

(d)      Awarding restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class members as a result of their unlawful, unfair and fraudulent business practices described herein;

(e)      Awarding declaratory and injunctive relief as permitting by law or equity to individual Plaintiffs, including enjoining Defendants from continuing the unlawful practices set forth herein, and directing Defendants to identify, with Court supervision, victims of their misconduct and pay them all money they are required to pay;

(f)      Exemplary and punitive damages sufficient to punish and deter the Defendants and others from future wrongful practices;

(g)      Pre-judgment and post-judgment interest;

(h)      Awarding attorneys' fees and costs; and

(i)      Providing such further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury of all issues raised in this Complaint.


DATED: April 29, 2025                    **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**


                                         */s/ Azar Mouzari*
                                         Azar Mouzari, Esq.
                                         Nilofar Nouri, Esq.

### **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the United States District Court Central District of California by using the CM/ECF system on April 29, 2025.

I further certify that all participants in the case appear to have been registered CM/ECF users and that service should therefore be accomplished by the CM/ECF system via electronically mail to all counsel of record.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 29, 2025, in Los Angeles, California.


*/s/ Nilofar Nouri*

Nilofar Nouri

155